PROVOSTY, C. J.
Plaintiff sues under the Workmen’s Compensation Act (Laws 1914, No. 20) for the death of her husband, and the *825 defense is that he was not an employé but an independent contractor. ,
Defendant owns and operates a sawmill, and owns timbered swamp lands for supplying the mill with logs. The logs are floated to the mill, after having been dragged from the place where they fell in the swamp when the tree was cut down to floating water, by means of a cable which is taken out into the swamp and attached to the log, and is then drawn in by a so-called “pull” boat. So-called “puil” roads, along which the cable is taken out and the logs pulled in, radiate in every direction from the pull boat. These pull roads are mere, avenues from which all obstructions liable to impede the progress of the log have been removed. They extend as far as 2,000 feet into the swamp, and are about 150 feet apart at the far end. The work of operating the pull boat and of opening up these avenues is done by day labor'; whereas, that of felling the trees and clearing a pathway from the place where the log lies to the pull road is done by piece laboreo much per tree. The workmen in the former work are housed and boarded by the defendant company. Those in the latter work are not, but house and board themselves; and they work according to a plan and agreement, which leaves the workman more or less free to abstain from work on any day or for as many days as he pleases, and to work during the day only as long as he pleases. But while this degree of freedom is left to the workman, he is expected to show up for work from day to day and to work during the day, with some degree of regularity — in other words, to be more or less dependable — as he is part of the logging outfit which has to operate continuously with regularity. He furnishes his own tools. The work is dangerous, and, it having to be done in mud and water, is unattractive, but is more highly paid than ordinary work. The laborers in it adopt it as their specialty, and become expert at it, so that only a minimum of supervision is necessary over them. After the place where they are to work has been assigned to them, they are left to themselves, except that the woods superintendent sees to it that the work is done right. By this is meant that the trees must be made to fall in the direction of the pull boat, and that the pathway to the pull road must be properly cleared. Another reason why some degree of regularity is necessary in the days and hours of work is that the piece men are depended on for pulling out, away from the pull boat and into the woods, a wire rope by which the wire cable is to be in its turn extended into the woods. For the pulling of this wire rope the men are paid by the hour. Each man is expected to drop his felling work and come at once to this work of rope pulling at any time during the day at a signal. The men work in pairs; and to each pair is assigned a space between two pull roads. Because of its exhausting nature, this work is not one that could be done day after day the year round; but the men managed to put in about ten days every half month.
This court, like all others in late years, has had occasion to consider the question of whether the circumstances in the particular case gave rise to the relation of master and servant or to that of independent contractor. Faren v. Sellers, 39 La. Ann. 1017, 3 South. 363, 4 Am. St. Rep. 256; Clark v. Tall-Timber Lumber Co., 140 La. 380, 73 South. 239; Swain v. Kirkpatrick Lumber Co., 143 La. 33, 78 South. 140; Helton v. Tall Timber Lumber Co., 148 La. 180, 86 South. 729; and the cases cited in these cases. Inasmuch as this last case is so confidently relied on by defendant, we shall have to point out the distinction between it and the present case; but apart from this we do not see that particular reference to these cases would be of much use.
The test applied in such cases usually is whether the power of superintendence and control has been retained by the employer; *827 but that test, while useful, as a general proposition, aids little in many cases towards the solution of the problem.
“While the courts are agreed in respect to the expression of the general rule, the results reached in its application to particular cases are often of the most contradictory sort. Undoubtedly much latitude must be conceded to the infinitely varying facts and circumstances, which distinguish and characterize the relation of the parties; but with all due allowance, it appears that the decisions have very often been in direct conflict. Thus precedents may be found both for and against the proposition that the statute is inclusive of persons who are engaged as piece workers, commission men, profit sharers, contractors having assistants in their employ, groups of workmen acting under their own foremen, and many others whose engagement resembles that of the independent contractor. * * * The truth is that the surrounding facts are so variable in this class of cases that it is difficult, if not absolutely impossible, to find any two that are on all fours. Many cases are plainly on one side of the question, and may readily be classified as showing the relation of master and servant; others are just as plainly to be deemed cases of independent contract; while the middle ground is traversed by still other cases that pass by imperceptible stages from one side to the other. In this situation the principle of stare decisis is of doubtful value.” 28 R. C. L. 762.
“The * * * fact that a man works by the piece is not sufficient to exclude him from the benefits of the compensation act.” L. R. A. 1916A, p. 118, note, and cases there cited.
In Rheinwald v. Builders’ Brick Co., 168 App. Div. 425, 153 N. Y. Supp. 598, the court said:
“Was Rheinwald an ‘employé’ in fairness and in fact within the meaning of the Workmen’s Compensation Law? Was he of the grade and status of worker, rather than of the grade and status of independent enterpriser? I am of the opinion that he was, and that such a holding is essential to effectuate the purpose of the act, in transmitting the burden of this bereavement from the scanty purse of the workingman’s widow and children to all the patrons of the product or service furnished by his employer. The fact that he was to be paid a lump sum or ‘by the job’ cannot be recognized as taking him out of the" class of ‘employés.’ The fact that his contract to do the work was in writing is not decisive on that issue, or the fact that by it he made certain undertakings of satisfaction of the employer on replacement if the finished work did not endure an expected length of time. The fact that his employment by the respondent was casual or intermittent cannot deprive him of the status of employé1, in the absence of explicit legislative pronouncement to that effect. The fact that he furnished tools or materials, or undertook to do a specified ‘job’ or produce a given result, does not prevent his' being in fact a workman, an ‘employe1,’ within the purview of this statute. Common sense and regard for the actualities should be potent on this issue, rather than technical distinctions and elaborate refinements. Rheinwald really was a worker; the sum he received for his painting was in an economic sense wages, and not profits; he had no helpers, on whose work he made a profit; he was not an employer, with employes whom it was his duty to insure under the act; he personally performed all the work; it was contemplated by the employer that he would; and the employer had at least potential control, direction and supervision of all the work tíheinwald did at his trade for the respondent.”
This excerpt from said case we have transcribed from note to Annotated Cases, 1916B, p. 794. From the same book at same place we transcribe the following:
“In State v. District Ct., 128 Minn. 43, 150 N. W. 211, it was held that a person who, being engaged in the timber cutting business, worked under an arrangement whereby he was paid a specified price per piece of timber cut. and exclusively given a certain territory in which to work, with the freedom of working when he pleased, was a workman and not a contractor.”
In State ex rel. Virginia & R. Lake Co. v. District Court, 128 Minn. 43, 150 N. W. 211, we transcribe as follows:
“In the present case Bashko did not contract to perform a specific and definite undertaking, nor to accomplish a specific and agreed upon result. He did not agree to cut any specific quantity Of timber, nor to cut the timber from any specific quantity of land. The company owned the timber and wanted it made into ties, poles and posts. It had established a schedule of prices which it paid for piecework. Bashko had worked at piecework for some years and could earn more than ordinary wages at such work. He applied for a job getting out timber by the piece and the company set him to work. The company had a large number of *829 men doing the same kind of work upon the same terms. It is not likely that the owners of valuable timber would permit ordinary workmen to cut and manufacture it for them wholly free from supervision or control. The evidence tends to show that the company did not surrender but reserved the right to supervise and control the work of Bashko, at least to the extent necessary to prevent waste and loss. They required him to cut the timber clean as he went, and to manufacture it according to specifications furnished by them, and also to pile the brush. They inspected his' work from time to time and occasionally directed him to remedy defects therein. They had the right to discharge him at any time, and this right afforded adequate means of controlling his work. The evidence was ample to sustain the finding of the trial court under the rule invoked,”
From 14 R. C. L. p. 72, we transcribe as follows:
“The power of an employer to terminate the employment at any time is incompatible with the full control of the work which is usually enjoyed by an independent contractor and hence is considered as a strong circumstance tending to show the subserviency of the employ®. Indeed, it has been said that no single fact is more conclusive, perhaps, than the unrestricted right of the employer to end the particular service whenever he chose, without regard to the final work itself.”
And from same book, at pages 74 and 75 as follows:
“On the other hand, the fact that the person is paid by the piece or by the job, though intimating that he is an independent contractor, is not conclusive on the question, and he may, nevertheless, be held to be a servant. Particularly is this so when there is no definite amount of work to be done, but either party is at liberty to terminate the employment whenever he wishes, and the employ® receives pay for just the amount of work done.”
In the case at bar the most salient feature is that the decedent was a mere swamp laborer earning his livelihood as one of a gang of men constituting part of the logging outfit of the defendant company’s sawmill. To characterize such a laborer as an independent contractor would be simply to ignore the realities of the situation.
A significant circumstance is that for keeping the logging outfit running defendant was more or less dependent upon the men who were in the habit of doing this work, that the men themselves, while under no contractual obligation to report regularly for work, or to maintain regular hours in working, yet could not but realize that they were more or less expected to do so, as their doing so was necessary for the continuous operation of the logging outfit. Their keeping their jobs necessitated, doubtless, some dependability on their part. Defendant had absolute control of them in the matter of allowing them to go to work, and discontinuing their work.
It must be admitted that the case of Helton v. Tall Timber Lumber Co., 148 La. 180, 86 South. 729, supra, is not easily distinguishablé from the present; and yet one cannot but feel that the two cases are fundamentally different. In that case a subcontractor for clearing a roadway was having the trees removed by men who cut them down and sawed them into logs; these men being free to work when and how they pleased, and being paid so much per thousand feet of the contents of the logs, board measure, for whatever work was done; sometimes only 2 and sometimes as many as 15 men being on the job. The men in that case were not part of an organized force for the operation of a plant, and more or less expected to continue in the‘employment, more or less under constant supervision; but mere casual workers, who would do whatever amount of tree cutting and log-sawing they pleased, and when and as they pleased, and under no supervision.
We think that an employment such as that of the decedent comes clearly within the contemplation of the Workman’s Compensation Act, and that plaintiff is entitled to judgment.
The average wage of the decedent was $17.58 per week. Plaintiff is entitled to 55 per cent, of this, or $9.67 per week, for 300 *831 weeks, dating from April 9, 1920, the date of the death of her husband.
It is ordered, adjudged, and decreed that the judgment appealed from he set aside, and that the plaintiff, Izella Gaines Bell, have judgment against the Albert Hanson Lumber Company, Limited, in the sum of $9.67 per week, beginning April 9, 1920, for 300 weeks, and that defendant pay the costs of this suit.
Rehearing refused by Division C, composed of Justices DAWKINS, ST. PAUL, and THOMPSON.