### No. 2291.
### Second Circuit Appeal.

---

## WILLIAM C. HEINE v. HILL, HARRIS & COMPANY, INC.

---

(June 13, 1925, Opinion and Decree.)
(July 11, 1925, Rehearing refused.)

---

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Master and Servant—Par. 156.**

Where, under Employers' Liability Act No. 20 of 1914, A was engaged to apply roofing material at a specified sum per square, no particular contract being made for each job but the employer depending on him to do the work, or have it done, the fact that he was paid by the square does not change A's status as employee and not contractor.

2. **Louisiana Digest—Master and Servant—Par. 156.**

Where, under Employers' Liability Act No. 20 of 1914, A was given instructions when and where to work and his employer objected to his working for others, and on this objection he abstained is an employee and not a contractor, even though he was paid at a specified sum per square.

(Sec. 8, Subsection 1 (b) of Act 20 of 1914. Editor's note).

Appeal from Thirteenth Judicial District Court of Louisiana, Parish of Rapides, Hon. John A. Williams, Judge.

This is a suit under Employers' Liability Act No. 20 of 1914 for compensation.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

White, Holloman & White, of Alexandria, attorneys for plaintiff, appellant.

Thornton, Gist & Ritchey, of Alexandria, attorneys for defendant, appellee.

ODOM, J. This is a suit under the Workmen's Compensation Law.

Plaintiff sues defendant to recover $18 per week for 400 weeks commencing September 26, 1923, and for the further sum of $250 for medical services, hospital bills, etc., incurred during his illness.

He sets out as a cause of action that he was employed by defendant to put a roof on a building owned by Dave Caplan which defendant had contracted to cover, and while at work putting on said roof he fell and as a result of the fall his back was fractured, his lower spine and lower limbs completely paralysed, and that he is totally disabled to do any work of a reasonable character.

There is no dispute of the fact that while putting a roof on the said building the plaintiff fell and was injured as above set forth.

The only defence to the suit is that the plaintiff was an independent contractor and not an employee.

The lower court held that the plaintiff was an independent contractor and rejected his demand. From that judgment plaintiff has appealed.

### OPINION.

The defendant, Hill, Harris & Co. Inc., had a contract to put a roof on a house belonging to Dave Caplan in Alexandria, Louisiana. It employed plaintiff to do the work, and while putting this roof on plaintiff fell and injured his back and as a result of the injury his lower spine and lower limbs are paralysed so that he is totally disabled to do work of any reasonable character.

If he is entitled to recover at all, he should recover what he sues for, to wit: $18 per week for 400 weeks, the maximum amount allowed under the law.

The only question presented for our determination is, whether plaintiff was a servant or employee of defendant or whether he was an independent contractor. If an independent contractor, he cannot recover, of course.

The defendant, Hill, Harris & Co. Inc., is engaged in a general building material business. It handles practically everything that goes into the construction of houses, and along with other material it handles a roofing material known as Bird & Son's roofing. This is a composition roofing which is put up in rolls.

The defendant sells this roofing by the roll or "square" to the customer, to be applied by the customer, or it sells it "applied", that is, it sells it and takes contracts to put roofs on houses for so much per "square", furnishing all material and labor to complete a roof and guarantees the roof it puts on of that material for a period of ten years.

The defendant does quite an extensive roofing business. Decidedly more than any other concern in Alexandria. While it sells Bird & Son roofing to any and all customers who desire it, the record shows that it makes a specialty of contract work, that is, selling the Bird & Son roof applied. It had a city salesman who went out into the city and solicited business of this kind for it. When a customer was found, it made a proposal, set out in a printed form which reads as follows:

"Job No.
"Roofing Proposal No.
"To
"Address:
"Dear Sir:

"We agree to furnish and apply............... Bird & Son's...............Roofing on............... located at............... for the sum of............... complete (including) (excluding) flashings of all kind in accordance with specifications attached hereto which are a part of this agreement under the following terms and conditions. This proposal is limited to thirty days acceptance. We agree to have application work done in accordance

with manufacturer's specifications, in a neat and workmanlike manner. Work to be completed providing building is in proper condition for roofing application."

Following the above is a printed guarantee in which it is stated that Bird & Son, Inc., guarantee its roofing material to be free from manufacturing defects, and if applied according to the specifications found on each roll will give satisfactory service for ten years.

This is signed by Hill, Harris & Co. Inc., and under the signature is the following:

"W. C. Heine does our application work."

If this proposal is accepted by the owner of the building, defendant "books the job" and at once communicates with Heine, the plaintiff in this case, that it has secured the contract to do the work. Defendant sends all the material necessary for the roof to the building and Heine applies it.

The agreement which defendant has with Heine is as follows: He is to furnish all labor and all tools and implements necessary for putting on the roofing and he received $1.50 per square for ordinary roofing and $2.00 per spquare if built up roofing. As stated, defendant furnishes and delivers at the building all the material.

Heine worked as a laborer himself and employed whatever helpers he desired—ordinarily only one, but he had, on occasion, employed as many as two. He fixed the price to be paid his helpers, paid them when he saw fit and discharged them at will. He set his own hours of work; he could work two hours or ten hours a day or not at all on any given day if he saw fit. All he had to do was to complete the work by a certain time according to the plans and specifications furnished by the manufacturer of the roofing material. The only restriction he was under as to the application of the material was that it should be applied according to those specifications. When he finished a piece of work he reported it to defendant with the number of squares. The defendant at once inspected or had inspected the work and if done according to the specifications it credited him on its books with the amount due him, which was $1.50 per square. He collected what was due him either when the work was completed or later as he saw fit. If there was another piece of work ready or him he went to work on it and if there was none ready he waited for another job.

In view of the above conditions, defendant contends that plaintiff was an independent contractor and not an employee of defendant.

It is pointed out that plaintiff was paid so much per square or piece for his work; that he furnished his own tools and implements; that he employed his own help, fixed their wages, paid them and discharged them at will; that he worked such hours as he saw fit, and did the work not under orders from defendant, but according to specifications furnished by Bird & Son, manufacturer of the roofing material; that defendant had no control over plaintiff; and that plaintiff was responsible to defendant only for the results, and that the means to attain the end were under plaintiff's control.

Defendant invokes the general rule, which is as follows:

"One who contracts to do a specific piece of work, furnishing his own assistance and executing the work either entirely in accordance with his own ideas or in accordance with a plan previously given him by the person for whom the work is done, without being subject to the orders of the latter in respect of the details of the work, is clearly a contractor and not a servant."

In other words, a master is one who directs not only the end to be attained

but also prescribes or reserves the right at any time to direct the means and methods of doing the work, and that the question whether one is a servant or employee on the one hand or an independent contractor on the other, turns on the point of control which is retained by the one having the work done.

In the case of Bell vs. Albert Hanson Lumber Co., 151 La. 824, 92 South. 350, Justice Provosty, as the organ of the court, said:

"The test applied in such cases usually is whether the power of superintendence and control has been retained by the employer; but that test while useful, as a general proposition, aids little in many cases towards the solution of the problem."

He then quotes from Ruling Case Law, volume 28, page 62, to the effect that all courts are agreed in respect to the expression of the general rule, yet the results reached in its application to particular cases are often very contradictory and that much latitude must be conceded to the varying facts and circumstances. He states that very often the decisions have been in direct conflict "in which situation the principle of stare decisis is of doubtful value".

In connection with and in addition to the above facts with reference to the employment of the plaintiff in this case, there are others which must be considered in determining whether plaintiff was an employee of defendant or simply an independent contractor.

Heine, the plaintiff, was an expert roofing engineer. He was engaged in this trade in the city of Alexandria and put on or applied roofing of any and all makes that the owner desired. It seems that he had considerable reputation as an expert and his services as a roofer were very much in demand. He had attracted the attention not only of the local people but the manufacturer of Bird & Sons' roof material, or its representatives, had heard of him and had become impressed with the idea that he would be a good man to apply its roofing.

When Bird & Son, Inc., gave the defendant the exclusive agency for its roofing material at Alexandria, it recommended plaintiff as the best man to apply it. Defendant at once sought his services. Plaintiff charged $1.50 per square to apply the roofing, which defendant was willing to pay. Defendant sought contracts for putting on roofs complete and advertised that W. T. Heine would do the work. Heine's reputation helped defendant build up the largest roofing business in that community.

At the time defendant secured the agency for Bird & Son's roofing the plaintiff was putting on roofing for any one who sought his services and he would use the kind of material furnished by the owner. But defendant objected to plaintiff applying any roofing material except Bird & Son's for which it had the exclusive agency, and while Mr. Harris of the defendant company says that Heine could have done work for other people, using other material, if he had so desired, and that, of course, is true, yet it is a fact, as abundantly disclosed by the record, that they objected to his applying other roofing material, and that for a considerable period of time prior to the accident Heine had done no work except for this defendant.

Of course, Heine could have broken away from defendant at any time, but it is a fact that defendant took him out of the market insofar as employment by others was concerned.

Using Heine's reputation and skill and the good qualities of Bird & Son's roofing as an advertisement, defendant built up quite a business.

It did not want Heine to apply other roof material because, as Mr. Bryan, city salesman of defendant company, testified, if they permitted him to do so

."We would lose the sale of the roof, of course."

and he was asked: (Page 43)

"And that was the particular objection that Mr. Harris had to Mr. Heine, the plaintiff in this case, applying the Palfrey roof?"

And he was asked (page 43).

"Yes, sir, and then it established a precedent, that we had him working for us and let him go out and work for others, too."

On page 39 Mr. Bryan says that he talked with Mr. Harris of the defendant company about Heine's doing work for others and—

"We talked about that and it was considered not to be good policy for him to apply other roofs than Bird's, for we sold the roofs applied on the house, and guaranteed the labor and material".

And he said—

"I don't recall any special jobs that that conversation came up over, but it was understood and agreed that it would not be good policy".

He was then asked if Mr. Harris instructed Heine not to put on any other roof than through Hill, Harris & Co., Inc., and he stated that on one occasion he solicited the business of putting on a roof for Mr. L. F. Brice; that Brice had bought his material from Mr. Palfrey, a competitor in the roofing business of Hill, Harris & Company, Inc., and that Mr. Brice told him that Heine was an expert and he wanted him to apply the roof but it was objected to because the roofing material was not Bird & Son's, and he was asked:

"Who made the objection to Mr. Heine applying the Palfrey roof?"

And he said—

"Mr. Harris said that he didn't care to have Mr. Heine apply any roofs except those that we handled."

Mr. Harris was asked, page 67:

"Did you object to his applying roofs during the time from February to September, for anybody else?"

And he said:

"The only thing that he could have construed as an objection was this. As long as we had orders on our books for roof jobs to be applied, we naturally expected him to give us preference, and I didn't want him to quit our jobs and go apply roofs for somebody else".

Again, he was asked:

"Did you tell him that?"

And he answered:

"I didn't tell him not to do it, but he naturally wanted to comply with my request in that instance."

And on page 69 Mr. Harris said:

"We were giving Heine the preference of all our roof contracts and expected that Heine give our work the preference. There were times that our work was delayed account of Heine doing work for outside people, and I didn't like that for it delayed our jobs."

Mr. L. S. Brice testified that he had purchased roof material from Palfrey and wanted Heine to apply it; that he spoke to Heine about it and Heine told him he would have to see Hill, Harris & Co., Inc., about it; that he went to Hill, Harris & Co., Inc., and asked it to let Heine do the work and it refused and as a result he purchased Bird & Son's roof from Hill, Harris & Company, Inc., in order to get the services of Heine in applying it. He said that he asked Mr. Harris, of the defendant company, to let Heine, the plaintiff, put the Palfrey roofing on, and that Mr. Harris would not agree to let him do it.

Mr. Heine, the plaintiff, testified that defendant objected to his putting on roofing for any one else, and that after defendant urged the objection—which was about the month of June—he did work for no one else.

Mr. Harris testified that Heine had done work for other people, and that is no doubt true, but we find that after the Brice incident and after defendant had objected, Heine did work for no one else. Mr. Harris said he did, but he was called upon to specify some particular work but could not do so.

It is also in evidence that the Day Builders and other roofing concerns wanted Heine to put a roof on the Power House and that defendant objected. Heine did not do the work although he says he could have made something on the job and wanted to do the work.

The testimony satisfies us that while Mr. Heine did work for others for a while, he ultimately abandoned all other work and confined his energies to contracts which defendant secured and that he worked for it exclusively.

It is perfectly clear also that defendants solicited and succeeded in building up a large roof business by advertising and holding out that Heine would do the work. They had printed on their contracts:

"W. T. Heine does our application work."

Defendant exploited not only the good qualities of the roofing material which it was selling but the skill and reputation of Heine as well. Heine became identified with and was a part of defendant's roof business. He was considered in connection with every contract secured by defendant. The trade understood that if they bought Bird & Son's roofing from defendant they bought also the services of Heine to apply that roofing, and it was generally understood also that unless they bought Bird & Son's roofing from defendant they could not secure the services of Heine for applying it.

Under the circumstances shown by the record Heine was as much an employee of defendant as if he had been on the payroll at so much per week or month. It is true that he was not carried on the payroll as an employee. He did work by the piece. He was paid so much per square for applying the roof.

It makes no difference, however, whether he was paid by the day or week or month, or whether he was paid so much per square, for his work.

See Burt vs. Davis Lumber Co., 157 La. 111, 102 South. 87.

Bell vs. Albert Hansen Lumber Co., 151 La. 824, 92 South. 350, Dick vs. Gravel Co., 152 La. 993, 95 South. 99.

It must be noted that there was no separate contract entered into for each job. Harris of the defendant company says that each job was a separate contract. That is true, as is shown by all the testimony, only insofar as the remuneration of Heine was concerned. He was credited on defendant's books for the amount due him for each piece of work, and in that sense each job was a separate contract.

But the facts are that no specific contract was entered into between the defendant and the plaintiff for doing any specific piece of work. When defendant secured a roofing job all it did was to notify the plaintiff that it had the contract and Heine proceeded to do the work just as he had done work on every other contract previous to that time. Instead of his entering into a contract for each specific piece of work, his employment with defendant was continuous and, as stated, when defendant secured a contract it ordered Heine to do the work and when the work was done he was paid for his serv-

ices according to the number of squares which he had put on in that particular job.

As we view it, this is a case where the defendant solicited and obtained business on the representation that it had an expert to apply the roof and when the contract was closed defendant sent its man, Heine, to do the work and when it was finished it credited him with the amount due him at so much per square.

It is contended by defendant that Heine did the work according to his own method, without being subject to the control of defendant, except as to the results of the work, and that he was, therefore, an independent contractor.

It is true that Heine was furnished specifications for applying the roofing and, being an expert, he knew more about how to apply the material than did the defendant, and very likely he used his own judgment and method in applying it and to that extent was independent and not subject to the control of defendant. But he was independent to that extent only.

The defendant gave plaintiff. instructions when and where to work. It transferred him from one job to another, on one occasion even though the former job was not finished. It objected to his doing work for others and upon this objection he abstained. On one occasion he was applying the strips across the building and defendant had him apply them lengthwise. Brice asked him to do work for him and he told Brice to see defendant. Heine himself says that it was his wish and desire and that as a matter of fact he did at all times just what defendant wanted him to do; and while it is true that he was not under the control of the defendant insofar as the method of applying the roofing was concerned, yet in other ways he was under the control of defendant. He had ceased to do work for other people.

The defendant company not only expected him to do its work and to be subject to its call for doing the work, as testified to by Mr. Bryan of the defendant company, but Heine gave the whole of his time to defendant if it should have sufficient work to occupy him during all of the time.

Mr. Harris of the defendant company states that he did not like it when Heine permitted outside work to interfere with defendant's jobs; and it is shown that subsequently to his signifying his objection Heine gave up all outside work. Harris says they could have discharged Heine any time and that Heine could have quit at any time.

Under such conditions we hold that Heine was an employee of the defendant company just as much so as if he had been carried on its books at a stipulated wage or salary per month.

He was an employee under our workmen's compensation statute. We think there is no question about it under the general law and jurisprudence of this State.

As already stated, the plaintiff, if entitled to recover any sum, is entitled to recover the full amount for which he sues. He was totally and permanently disabled. He is entitled to the maximum amount allowed under the statute, which is $18.00 per week during his disability not exceeding 400 weeks.

It is admitted that he incurred medical and hospital expenses amounting to $250.00, and he asks for judgment for that amount also.

We think the lower court erred in holding that the plaintiff was an independent contractor.

For the reasons assigned, it is, therefore, ordered, adjudged and decreed that the judgment appealed from be avoided and reversed, and it is now ordered, adjudged and decreed that the plaintiff, W. T.

Heine, have judgment in his favor and against the defendant, Hill, Harris & Company, Inc., for the sum of $18.00 per week during his disability for a period not exceeding 400 weeks, commencing September 26, 1923, with 5% per annum interest on the weekly payments from the date they are due; and judgment for $250.00 for medical and hospital expenses, together with legal interest on the same from date of expenditure. The defendant to pay all costs of this suit.

---

## ON APPLICATION FOR REHEARING.

CARVER, J. Defendant's counsel earnestly urge that we erred in holding that defendant had any control over plaintiff other than in accordance with the plans and specifications, which control, they say, is the real test in determining whether plaintiff was a servant or an independent contractor, and in holding that the case is governed by the decisions in Dick vs. Gravel Company, 152 La. 993, 95 South. 99; Bell vs. Hanson Lumber Co., 151 La. 824, 92 South, 350; and Burt vs. Davis, 157 La. 111, 102 South. 87, instead of the decisions in Clark vs. Tall Timber Lumber Co., 140 La. 380, 73 South. 239; and Helton vs. Tall Timber Co., 148 La. 180, 86 South. 729.

Amongst other citations, substantially to the same effect, they cite 26 Cyc. 1546 as follows:

"An independent contractor is one who, carrying on an independent business, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work. Generally the circumstances which go to show one to be an independent contractor, while separately they may not be conclusive, are the independent nature of his business, the existence of a contract for the performance of a specified piece of work, the agreement to pay a fixed price for the work, the employment of assistants by the employee who are under his control, the furnishing by him of the necessary materials, and his right to control the work while it is in progress except as to results.

"The rest of the relationship is the right to control. It is not the fact of actual interference with the control but the right to interfere which makes the difference between an independent contractor and a servant or agent. To enlarge the test is whether the employee represents his employer as to the result of the work only or as to the means as well as the result. If the employee is merely subject to the control or direction of the owner or his agent as to the result to be obtained, he is an independent contractor. If the employee is subject to the control of the employer as to the means, he is not an independent contractor."

Testing this case by the rule given in this citation, we find that one of the elements, namely, the furnishing of materials, is wholly absent and the others, though they are in a certain sense present yet they are so only in a qualified sense. The fixed price was true only as to laying the Bird roofing. If preparation of the old roof involving carpentry was necessary plaintiff did this and was paid reasonable compensation not fixed in advance. Each roof, of course, was a specific piece of work, but there was no special contract made each time. Defendant in obtaining orders for roofs stated in its printed blanks that plaintiff did its application work, and when it got an order for an applied roof, it simply sent the roofing material to the building and notified plaintiff to put it on, without negotiating with plaintiff in any manner.

Plaintiff's business was independent in the sense that he could leave Alexandria and go elsewhere or could engage in some other business there; but considering that defendant had the exclusive sale of Bird roofing, that plaintiff had specialized in

putting on that kind of roofing, that defendant's business in the Bird roofing line was almost if not quite extensive enough to occupy all of plaintiff's time, that defendant expected if it did not require plaintiff to accord it preference in its work, and that defendant could discharge plaintiff at the end if not in the middle of any job, it seems to us that the resulting situation left plaintiff far from independent in any real sense.

These circumstances gave the defendant the power of control as to means and methods as well as results whether they gave the right of control or not. This power of control extended to the employment of helpers, and plaintiff testifies:

"Q. And he didn't have anything to do with firing them?
"A. I don't know whether he did or not, —if he had fired them, I would have had to let them go.

Defendant seeks to minimize the control shown by shifting plaintiff from the Weil to the Milady job by saying that this was done not by order but only by request. Under the situation, though, it seems to us that there was little difference between an order and a request.

Plaintiff had to satisfy defendant or risk losing his job. Besides the domination of the situation which the circumstances above mentioned gave to defendant without an express stipulation giving it control, the printed instructions for laying the roof contain features showing control not only as to results but as to means and methods. These are as follows:

"We do not recommend laying roll roofing in a vertical direction on roofs of less pitch than 4 inches to the foot. Cut the roofing with a sharp knife and always lay the inside of the roll to the weather. * * * In cold weather set cans of cement in hot water before using. Do not set near a fire. Apply with a short stiff brush or putty knife. * * * Begin to lay roofing at the eaves. * * * Use staging on steep roofs taking care not to nail into finished roofing.

Furthermore the citation from Cyc. is not nor does it pretend to be an exact formula. Other elements sometimes enter, not therein mentioned. An outstanding one in this case is the fact that essentially the pay that plaintiff received was in an economic sense mainly wages for his own labor rather than profit on the labors of others or return on capital investment.

See Dick vs. Gravel Company, *supra*.

Plaintiff never employed more than two assistants and seldom more than one and not even one all the time. In appraising the whole situation, his employment of so limited a number of assistants even were his control over them wholly unrestricted, is of little weight as compared to the more dominating features.

Our re-examination of the case has confirmed us in the opinion that the doctrine of the Dick, Bell and Burt cases controls rather than that of the earlier cases of Clark and Hilton. It is to be noted, too, that though the Supreme Court has mentioned the Hilton case in subsequent decisions it has not re-affirmed same, and in the Dick case Chief Justice O'Niell expressed the opinion that it should be expressly overruled.

Rehearing refused.