## HALL v. SOUTHERN ADVANCE BAG & PAPER CO.

### No. 4951.

Court of Appeal of Louisiana. Second Circuit.

Feb. 5, 1935.

Goff & Goff, of Arcadia, for appellant.

James G. Palmer, of Shreveport, and R. L. Williams, of Arcadia, for appellee.

MILLS, Judge.

Pending the appeal, plaintiff has died intestate. His father, mother, and four brothers have been placed in possession of his estate by judgment of court. They appear and move to be made parties plaintiff. This motion is conceded to have been properly granted. Subsequently, counsel for the substituted parties has filed a supplemental brief· in which they claim the total amount of the judgment rendered in the lower court, if affirmed.

In the recent case of Renfrow v. Caddo Parish Police Jury et al., 155 So. 291, in identically the same situation, this court decided that the heirs, substituted as plaintiffs, are only entitled to recover the weekly payments which had accrued to deceased at time of his death.

Counsel seek to distinguish the cases, contending that the award in the Renfrow Case was conditional in that it was for a period not in excess of 100 weeks, whereas in the instant case, permanent disability being admitted, the judgment of the lower cour· is in effect for a fixed· and certain period. Even if correct in the latter view, the distinction fails, because the judgment rendered by the lower court in the Renfrow Case should have been for the fixed term of 100 weeks. Odom v. Atlantic Oil Producing Co., 162 La. 556, 110 So. 754.

In the present case, despite the admission, the only judgment authorized is during the period of disability, not, however, beyond 400 weeks. Section 8, subsec. 1 (b) of Act No. 20 of 1914, as amended by Act No. 242 of 1928, p. 357.

The wisdom of such a limitation is well illustrated by the situation in this case. Though his injury was permanent, plaintiff's disability terminated with his death. The lesser calamity is included in the greater. Wozneak v. Buffalo Gas Co., 175 App. Div. 268, 161 N. Y. S. 675.

Beyond the workman himself, the act permits compensation only for dependents. In the present case, the substituted parties make no such demand, and could not, because death occurred more than one year after the accident. Subsection 2, § 8, Act No. 20 of 1914, as amended by Act No. 242 of 1928, p. 357. Whatever right they have arises not from the act, but from the general law.

In Schneider's Workmen's Compensation Law, vol. II, § 380, p. 1292, the general rule is stated to be that, in the absence of some provision vesting in some survivor the right to compensation payments, death terminates the compensation. The personal representative is entitled only to the amount of compensation due at the time of the death of the injured employee. It will thus be seen that the Renfrow Case follows the general rule.

The pendency of an appeal does not prevent the accrual of the weekly payments up to the date of death if the allowance of compensation is affirmed. Castelluccio v. Cloverland Dairy Products Co., 165 La. 606, 115 So. 796; Powers v. Sumbler, 83 Kan. 1, 110 P. 97.

We therefore conclude that the heirs are properly made parties, but that their recovery is limited to the weekly compensa-

tion, if and as finally allowed, which had accrued at the time of the employee's death.

Herman Hall, 19 years of age, was emancipated just prior to the filing of this suit, but was an unemancipated minor at the time of the happening of the accident relied upon herein. He alleges that he was employed by defendant to haul by motortruck its pulpwood from the woods where cut to its mill at Hodge, La., for a consideration of 75 cents per cord, earning a daily wage of at least $5; that on February 10, 1933, while engaged in this work, a log accidentally fell on his left foot, bruising and mashing it; that the wound became septic, causing blood stream infection and osteomyelitis and so affecting his limbs and body that he is permanently totally disabled, for which he claims the maximum of $20 per week for 400 weeks, and $250 for medical expenses as provided in the Employers' Liability Act (Act No. 20 of 1914, as amended).

In the alternative, he pleads that, if not an immediate employee of defendant, he was at least an employee of Newtie C. Hall, his father, who was himself employed by defendant.

Defendant, after excepting to the petition as disclosing no cause and no right of action, answered, with reservation of its rights under said exception, denying that plaintiff was its employee, and alleging that he was an independent contractor of his father, N. C. Hall, an independent contractor of defendant's, and that any disability now suffered by plaintiff is not the result of the accidental injury alleged, is not permanent, and that his weekly wage, if any, did not exceed $7.50.

The exception of no cause of action was not urged or passed upon below, so it will be considered as abandoned.

In the lower court there was judgment for plaintiff as prayed for, from which defendant prosecutes this appeal.

Defendant is the owner of a mill at Hodge, La., where pulpwood is manufactured into paper. It was the owner of standing pulp timber in the northeast quarter of section 15 and the northeast quarter of section 16, township 15, range 5, Bienville parish, La. Plaintiff, in a truck owned by him, with a helper employed and paid by him, was engaged in loading and hauling pulpwood from the above location, a distance of from a few hundred yards to half a mile to Cox's Crossing, where, with the aid of his helper, the wood was loaded into cars

to be shipped to defendant's mill. He was to receive 75 cents per cord for wood so hauled and delivered. He averaged twelve cords per day. He paid his helper $1.25 per day. Truck drivers were also paid $1.25 per day. The only labor performed by plaintiff was the loading and unloading of the timber and the driving of the truck. It is therefore clear that his labor was worth no more than $1.25 per day, and that the amount received by him in excess of this was for the expense and profit of the truck. It is clear, then, that in any event he can only recover compensation based upon a wage of $1.25 per day, or $7.50 per week.

On the 10th of February, 1933, after hauling about four days, while transferring the timber from his truck to the car, a stick weighing from sixty to seventy-five pounds fell upon his left foot, causing bruises, abrasions, and contusions which allegedly resulted in the infection and permanent disability.

Counsel have considerably lightened the work of the court by agreeing that the case is reduced to three issues:

(1) Whether there was any contractual relation between plaintiff and defendant rendering it liable under the Workmen's Compensation Act.

(2) Whether there is a causal connection between the accident and the disability.

(3) If defendant is found liable, the amount of his wages.

The lower court resolved the first two issues in favor of plaintiff and rendered judgment based upon the total amount received rather than upon that part earned by labor alone.

The defendant company is not engaged in the logging business. It maintains no tree-cutting crew, and furnishes no implements for that work. It is not engaged in the timber hauling business, and maintains no trucks or organization for that purpose. To be available for manufacture, its timber must be cut and delivered to its mill. It chooses not to do this work itself, but to let it out by contract to others, paying so much per cord for same. It does employ a woods superintendent who has authority to make and terminate these contracts. It is his duty to go over the territory every two or three days and see that the contractors are cutting on land assigned to them and are otherwise complying with their contracts and supplying wood in reasonable volume. He employs no individual laborers or workmen and has no authority to discharge any.

The company's recourse, if dissatisfied with the way the work is done, is to terminate the contract. This right is mutual.

At the time of plaintiff's accident, his father, N. C. Hall, had contracted with Lewis, defendant's woods foreman, to cut and haul timber from the above-described tract for a consideration of $1.25 per cord. There is a dispute as to this, Hall saying that his contract was limited to the hauling alone, for which he was to be paid 75 cents per cord; that his assistance of the superintendent in keeping the time of the wood cutters was purely gratuitous; that the cutters were employed and paid by the company and were its employees. On the other hand, Lewis testifies that the contract was as above stated, and that the company had nothing to do with the cutters, that it had no interest in the details or manner in which the work was done; its only concern being that the wood should be cut, transported, and delivered to its mill in a sufficient volume to meet its needs.

We think the latter's contention is supported by the proven facts in the case and by the course of conduct of the parties. It is shown by authentic documents, filed in the case, that bimonthly statements were rendered to Hall, which credit him with the number of cords delivered at $1.25 per cord and charge against that amount the cutter's pay roll made up, signed, and turned in by him and the coupons and store accounts receipted for by him and the cutters. These statements were delivered to Hall every two weeks over a long period of time, and settlement made in accordance with them without objection from him. Their admissibility was strenuously objected to by plaintiff on the ground that the company could not prove its case by extracts from its books. We think that the statements, being accompanied by the original signed pay roll and receipts from which its debits were made up and admittedly received by him regularly without objection, are clearly admissible, not as proving any particular amount due, but as showing the conduct of the parties.

We are satisfied from the whole record that Hall's contract was to both cut and haul the timber. He was assigned certain lands to cut on and haul from, and paid $1.25 per cord to cover both the cutting and the hauling; but it was not agreed that he should cut and haul any certain amount or all the timber on the tract. The contract was from load to load. The load then was the unit. He had two trucks of his own engaged in doing this hauling, each operated by a driver and helper hired and paid by him. He did none of the actual labor himself. What he got out of the job was a profit on the labor of his employees and the use of his trucks. The wood cutters were selected by him, he kept up with their work, measured the amount cut by each, and turned in to the company each week a list made out and signed by him showing what was due each man. The wages of the cutters were advanced by the company, and the total amount, together with the coupons and store accounts, charged against Hall's account as stated above.

Hall claims that the cutters were not his employees, but those of the company; that his services in putting them to work, supervising, and checking up their cut, and turning in their pay, was pure gratuity on his part; that his contract with the company was only for the hauling at 75 cents per cord. This is unreasonable and entirely at variance with the conduct of the parties as demonstrated by the statements. We say it is unreasonable because no business concern would leave to the gratuitous attention of a third person the selection, supervision, and fixing of the pay of a large force of wood cutters. We think Hall's authority over the wood cutters is well shown by the testimony of plaintiff's own witness, Hoadley: "When we went to work there I was swamping and cutting wood and when Herman came up there without a helper Mr. Hall said help Herman."

Plaintiff contends that the status of N. C. Hall was that of an employee because the contract was not for a specified amount of work or a complete job, and not for a fixed amount or a certain sum; also because the company had the right to terminate the agreement at any time; and further because of the control it maintained over the work. We are satisfied that this control was limited to designating the place from which the timber was to be cut and removed and the place of delivery, together with the right to see that the contract was reasonably complied with. It is testified to, and not denied, that Lewis instructed the truck drivers that they were not to haul strangers on their trucks. We do not think that this constitutes an interference with the performance of the work, but is a reasonable requirement for the protection of the company against possible unfounded lawsuits.

Plaintiff and his father attach much importance to their claim that defendant moved

them about against their will from location to location and interfered with their work on the various locations. They cite one instance alone. They claim that they were compelled to haul timber from another tract in Bienville parish while working at Cox's Crossing, but it is shown that this was done under an entirely different contract. This is proven by the following testimony of N. C. Hall, referring to the Bienville job: "Q. You remember how much your contract price was for hauling that wood? A. I think they paid us $1.50 per cord." And that of Herman Hall, the plaintiff, who says: "Q. You had a direct contract with the company at that time to haul that wood for $1.50 per cord? A. Yes, sir."

This Bienville job was finished on January 26th, whereas Herman did not do any work on the Cox's Crossing job until the following February 6th. Under these circumstances, we fail to see how this Bienville hauling affects in any way the Cox's Crossing contract.

Herman Hall owned his own truck and employed his own helper. It is clear that he was never directed to go to work by Lewis or any agent of the company. N. C. Hall says that he obtained Lewis' consent for Herman to haul. He testifies:

"Q. Then if I understand, yours and his agreement was that you had a contract to deliver all this wood and he came in and joined you in it and was to keep an account of his and then later on enough would be shipped in his name to make up for what he hauled that was shipped in your name, is that correct? A. I had an agreement with Mr. Lewis that he could have this work and as much of it as he could at 75¢. Mr. Lewis consented that the boy come over.

"Q. And haul like you? A. Yes, sir."

Herman says:

"Q. You had a contract direct with the company? A. No, I didn't have any contract.

"Q. You didn't have a contract with the company to haul for so much a cord? A. No, sir. Mr. Lewis gave me consent to haul.

"Q. For your father? A. With my father.

"Q. What do you mean with him? A. I received as much as he got.

"Q. You hauled under the same kind of contract as your father? A. Only I didn't fool with the cutting.

"Q. Who would pay for it? A. The Company.

"Q. How much were they paying for the hauling of the wood? A. Seventy-five cents."

This testimony admits that the cutting was included in the father's contract and positively, by the testimony of the parties themselves, shows that Herman was not an employee of his father, but a cocontractor with him, or a subcontractor under him. As the father was an independent contractor, the son, operating under the same arrangement, was necessarily himself an independent contractor, and cannot recover.

Our Workmen's Compensation Act (Act No. 20 of 1914, as amended by Act No. 85 of 1926, p. 111), in subsection 8, § 3, thus defines an independent contractor: "The term 'independent contractor' shall be considered to mean, for the purpose of this act, any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished."

The three leading cases decided by our Supreme Court, upholding the relationship of employer and employees, are, Bell v. Albert Hanson Lumber Co., 151 La. 824, 92 So. 350, 352: Dick v. Gravel Logging Co., 152 La. 993, 95 So. 99, 101; Burt v. Davis-Wood Lumber Co., 157 La. 111, 102 So. 87, 88.

In the Bell Case plaintiff was a mere swamp laborer, engaged in cutting trees, for which he was paid by the piece, working under the supervision and control of defendant. He was one of the logging outfit of defendant company's sawmill. It is emphasized that he was one of an organized force for the operation of a plant and more or less expected to continue in the employment, more or less under constant supervision. The court said, "To characterize such a laborer as an independent contractor would be simply to ignore the realities of the situation."

Likewise, in the Dick Case, the court found: "The deceased, in the instant case, was not carrying on an independent business; he had not undertaken to perform a specified piece of work; he had no assistants under his control; he was a mere laborer employed by the defendant company as part of its logging outfit engaged in cutting down trees and sawing them into logs in its timber holdings."

In the Burt Case plaintiff was employed to deliver sawn lumber to customers from defendant's mill for so much per thousand feet. He boarded at the company's boarding house, was carried on the pay roll and paid on regular pay days, the same as other

laborers. The company pointed out the kind and character of the lumber to be hauled and directed the place of delivery. It had practical control and supervision over the haulers and the right to discharge at will. Burt furnished, loaded, and drove his own wagon, each load being measured by the company, which gave him specific written instructions as to whom and where each load was to be delivered. Under the circumstances, the court said the doctrine of independent contractor had no application; there being no particular job to be executed, no specific quantity to be hauled, but only such as was pointed out by the employer. Plaintiff was simply the company's delivery man, paid by the piece. In that case the court found Burt to be merely a laborer paid by the piece. It went on to say: "Of course, if the employee had engaged to haul the output of the mill at so much per thousand, furnishing sufficient teams and wagons, and employing assistants and drivers to do the hauling, a different case might be presented. In such a case it might well be said that the compensation was to cover profit on the investment in the teams and wagons, and not compensation for personal services. The wage-earners could be the laborers who were employed by the owner of the teams to do the hauling."

In the Dick Case the following definition of an independent contractor, found in 25 Cyc. 1546 et seq., is quoted with approval: "An independent contractor is one, who carrying on an independent business, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work. Generally the circumstances which go to show one to be an independent contractor, while separately they may not be conclusive, are the independent nature of his business, the existence of a contract for the performance of a specified piece of work, the employment of assistants by the employee who are under his control, the furnishing by him of the necessary materials, and his right to control the work while it is in progress except as to the results."

In the Bell Case, the court quotes from 28 Ruling Case Law, p. 762, as follows: "While the courts are agreed in respect to the expression of the general rule, the results reached in its application to particular cases are often of the most contradictory sort. Undoubtedly much latitude must be conceded to the infinitely varying facts and circumstances, which distinguish and characterize the relation of the parties; but with all due allowance, it appears that the decisions have very often been in direct conflict. Thus precedents may be found both for and against the proposition that the statute is inclusive of persons who are engaged as piece workers, commission men, profit sharers, contractors having assistants in their employ, groups of workmen acting under their own foremen, and many others whose engagement resembles that of the independent contractor. * * * The truth is that the surrounding facts are so variable in this class of cases that it is difficult, if not absolutely impossible, to find any two that are on all fours. Many cases are plainly on one side of the question, and may readily be classified as showing the relation of master and servant; others are just as plainly to be deemed cases of independent contract; while the middle ground is traversed by still other cases that pass by imperceptible stages from one side to the other. In this situation the principle of stare decisis is of doubtful value."

The Louisiana cases cited above have been followed in Alexander v. Latimer, 5 La. App. 41; Beebe v. McKeithan Const. Co., 5 La. App. 179; Powell v. Spencer Bros., 5 La. App. 218; Morgan v. Nelms, 5 La. App. 414; James v. Hillyer-Deutsch-Edwards, Inc., 15 La. App. 71, 130 So. 257; Lee v. Brown Lumber Co., 15 La. App. 294, 131 So. 697.

The facts in these cases are clearly distinguishable from those in the case before us, and have been so distinguished by our Supreme Court. In Johnson v. Vincennes Bridge Co., 167 La. 107, 118 So. 820, 821, brought under the provisions of the Workmen's Compensation Act, the facts were: "The record shows that in the year 1926 the Vincennes Bridge Company, the respondent, was engaged in building a bridge across West Pearl river in the parish of St. Tammany. In the course of the work it entered into an agreement with L. H. Johnson, the relator, whereby he undertook to unload a certain carload of steel and to haul the steel when unloaded from the railroad station to the scene of the building operations—a distance of about one-half of a mile. The parties estimated the weight of the steel to be 32 tons, and the agreement was that relator was to be paid at the rate of $2 per ton for unloading and hauling it. It was understood, also, that relator was to furnish all trucks and all labor necessary for doing the work. A few days after the agreement was entered into, relator, using a truck, which

he owned, and assisted by two laborers, whom he had employed, began to unload and transport the steel. On the same day, about 4 o'clock in the afternoon, while plaintiff and his helpers were unloading the steel from the freight car to the truck, one of the pieces of steel fell on relator's hand, causing the injury upon which the present suit is founded."

Under these circumstances, the court found:

"Plainly, the transaction was not one in which the respondent exercised, or was intended to exercise, any supervision or control over the relator. The latter was not required to unload particular pieces of steel as they were pointed out to him by the respondent or its agents, nor was he specifically directed to the place where and to whom he should deliver the steel. Relator was not carried on the pay roll of the respondent, nor was he to be paid biweekly on the regular pay days. Under the agreement, all that was required of the relator was that in his own time and in his own way he should unload a specific amount of steel from a particular railroad car and transport it from that point to a specific destination—the bridge site—for a stipulated price per ton. Relator furnished his own truck, and employed his own laborers, who were unknown to the respondent, in order to carry out his part of the agreement. He expected to complete the work in four days, at a total expense of $37.50, including a charge of $5 for the use of his truck, netting him $27.50 as his profit on the contract. The fact that relator, in unloading the steel from the car, was permitted to use some equipment belonging to the respondent, does not destroy his character as an independent contractor. Robideaux v. Hebert, 118 La. 1089, 43 So. 887, 12 L. R. A. (N. S.) 632. Nor was that result accomplished because, the morning after relator was injured, respondent secured other persons to complete the unloading and hauling of the steel. Respondent himself sent his own truck and employees to continue the work, but, when they found that other persons were on the job, these employees returned with the truck to the home of the relator. The nature of the contract was established by the terms of the agreement, and neither of the parties could control its legal effect. Relator could have insisted on his rights under the contract, and, if respondent's action in cancelling it was unwarranted, could have sued for and recovered the profits of which he had been deprived.

"Relator strongly relies on the case of Burt v. Davis-Wood Lbr. Co., 157 La. 111, 102 So. 87, contending that the facts in the case are in all respects similar to the facts in the case at bar. In some, but not in all, respects the facts in both cases are similar. The Court of Appeal in its opinions, on the original hearing and on the application for a rehearing, has pointed out wherein the cases are dissimilar, and it is unnecessary for us to incorporate its analysis in our opinion. It suffices to say that the issues in the present case are not controlled by the decision in the Burt Case.

"Relator also cites Bell v. Albert Hanson Lbr. Co., 151 La. 824, 92 So. 350, and Dick v. Gravel Logging Co., 152 La. 993, 95 So. 99. The decisions are not appropriate, because the facts which brought the plaintiffs in those cases within the terms of the Workmen's Compensation Law are wholly absent from the present case. In one of the cited cases—Dick v. Gravel Logging Co.—we said that the statute is humane in its purpose, and its scope should be enlarged, and its provisions liberally construed, so as to include all services that can be reasonably said to come within them. We adhere to the principle enunciated as being applicable to all cases arising under the statute. Nevertheless the line must be drawn somewhere, and we think it is proper to do so in a case, such as the one at bar, in which the relations of the parties are clearly shown to be those of contractor and contractee, and not those of employer and employee."

The analysis of the facts by the Court of Appeal, referred to above, is enlightening, and is found in 9 La. App. 173, 119 So. 539.

The distinction is again clearly made in Beck v. Dubach Lumber Co., 171 La. 423, 131 So. 196, 197, in which the Dick, Bell, and Burt Cases are again discussed. In this case, on the question of control, it is held that "The fact that the right of supervision is reserved to the owner for the purpose of seeing that the specific work is done in compliance with the contract will not prevent the employee from being an independent contractor."

Again: "And our own courts have repeatedly held that the mere fact that a proprietor retains general supervision over work to be constructed for him by another, for the purpose of satisfying himself that the contractor carries out the stipulation of his contract, does not make him (the proprietor) responsible for the wrongs done to third persons in the prosecution of the work."

See Ryland v. Wheeler Lumber Co., 146 La. 787, 84 So. 55.

In Clark v. Tall Timber Lumber Co., 140 La. 380, 73 So. 239, the syllabus by the court reads: "One who contracts to furnish ties for railroad purposes, at so much per tie, works when and how he pleases, furnishes his own implements, employs, directs, pays, and discharges his own laborers, and is not carried on the pay roll of the other contracting party, is an 'independent contractor,' and has no right of action, under the Burke-Roberts Employers' Liability Act (Act No. 20 of 1914), for damages for personal injuries sustained by him whilst engaged in the execution of his contract."

In view of these late decisions, the only grounds upon which N. C. Hall could be held an employee are that he was not given a specific job to perform and that his contract was terminable at the will of either party.

While Hall did not contract to cut and remove all of the timber from certain lands, his agreement was limited to a certain tract from which he contracted to haul a certain distance for a certain price. Any change in the distance would entail a new contract for a new consideration. We have no difficulty in determining that his contract was for a specific job and not one of general employment.

The fact that the contract was from load to load and not for a fixed period, that it was terminable at the will of either party, is an important element in determining the status of Hall, but, after all, only one element, and not necessarily controlling. It does not involve the right to "fire" or discharge, which words imply the ending of an employment before the expiration of its term. It does not involve any breach of contract, as a contract cannot be breached by an action contemplated and, permitted by it.

In the Bell Case the court quotes with approval from 14 R. C. L. 72, as follows: "The power of an employer to terminate the employment at any time is incompatible with the full control of the work which is usually enjoyed by an independent contractor and hence is considered as a strong circumstance tending to show the subserviency of the employee. Indeed, it has been said that no single fact is more conclusive, perhaps, than the unrestricted right of the employer to end the particular service whenever he chose, without regard to the final work itself."

This is only an element to be considered. Can it outweigh the fact that N. C. Hall was in no sense a laborer; that he did none of the work himself; that what he received was in no sense wages, but a profit on the labor of men employed and supervised by him and from the use of trucks owned by him and operated by his employees? After all, the true test is well expressed in Rhienwald v. Builders' Brick Co., 168 App. Div. 425, 153 N. Y. S. 598, quoted in the Bell Case as follows: "Common sense and regard for the actualities should be potent on this issue, rather than technical distinctions and elaborate refinements."

Viewing the present case thus, and applying the common sense rule, we conclude that N. C. Hall was an independent contractor and not an employee. The situation as to Herman Hall is somewhat different, in that he performed a part of the actual labor and drove the truck. His counsel contend that he was an employee of his father, and that, though the father be an independent contractor, his employee can recover from the principal.

The fact that he himself did a part of the actual labor is not controlling. In Hatten v. Haynes et al., 175 La. 743, 144 So. 483, 485, the court says: "The fact that plaintiff personally undertook to do the manual labor is not sufficient to exclude him from the statutory definition of an independent contractor. There was nothing in the contract that required plaintiff to do, or which prohibited him from doing, the laboring work himself. Plaintiff was not employed to do the manual labor, and whether he should or should not do such work was left solely to his own decision. The work which he performed was for his personal benefit, adding to his profit by saving him the expense of employing others to do the work for him."

Considering the direct testimony of the father and son that Herman was working with and not for his father, that the son was to ship the wood in his own name and eventually be paid by the company, and that he was hauling under the same kind of contract as his father, except that he did not fool with the cutting, that he received the same consideration for the hauling, it is impossible to hold that he was an employee of the father. If, as he says, he was hauling under the same kind of arrangement as his father, which we have found to be that of independent contractor, then necessarily he was himself an independent contractor and cannot recover compensation.

For the above-assigned reasons, the judgment appealed from is reversed, and the demands of plaintiff rejected.

DREW, J., dissents.