No. 641

**First Circuit**

———

**JAMES v. HILLYER-DEUTSCH-EDWARDS, INC.**

———

(October 8, 1930. Opinion and Decree.)
(December 1, 1930. Rehearing Refused.)
(January 5, 1931. Writ of Certiorari and Review Refused by Supreme Court.)

———

Fern M. Wood, of Leesville, attorney for plaintiff, appellee.

Thornton, Gist & Richey, of Alexandria, attorneys for defendant, appellant.

ELLIOTT, J. Charley James, alleging employment by Hillyer-Deutsch-Edwards, Inc., as a tie hauler, and permanent injury, sustained while engaged in his work, producing in him a total disability, claims of them 65 per cent of an alleged daily wage of $8 per day, as compensation for a period of 400 weeks, and $250 in addition for medical services and medicine.

Defendant denies the alleged indebtedness and that plaintiff was in its employment at the time of his alleged injury. Alleges that plaintiff in doing the work set out in his petition was an independent contractor. Denies that plaintiff was earning $8 per day, and alleges that his earnings were less than $1 per day, if he actually made any profit whatever out of his transaction.

The lower court, giving written reasons, held in favor of the plaintiff and condemned the defendant to pay him compensation at the rate of 65 per cent of a weekly wage estimated to have been $15.66 for a period of 400 weeks and to pay him $50 in addition for medical attention and medicine.

Defendant has appealed.

The fact that plaintiff sustained a hernia in the inguinal region, but which came out above the external ring, is not questioned by evidence. There is no ground for serious contention that it was not received in the manner alleged by the plaintiff. The fact is supported by his own evidence and by corroborating facts and circumstances of such character that, in the absence of any evidence to the contrary, we look on the fact as established.

An important question controverted is whether plaintiff in doing the work, which it is admitted he was doing, was an independent contractor, or working in the service of the defendant.

Plaintiff was engaged in hauling cross-ties belonging to defendant. He first hauled from a locality designated to him by Dan Johnson, an employee of defendant, but the one from which he was hauling at the time of his injury had been designated to him by George White. Defendant contends that George White was an independent contractor, but we are satisfied from the evidence that George White and Dan Johnson were both agents and employees of defendant, whose work was to superintend the manufacture and hauling of cross-ties, cut from defendant's land. For the purpose of his work, the plaintiff furnished his own truck, labor, gasoline, and oil, kept his truck in repair, drove it, loaded the ties in the woods where they had been manufactured by defendant's cutters, unloaded and stacked them on the Santa Fe Railroad at places which at the time of his injury had been designated to him by defendant's agent George White, receiving for his work 15 cents per tie.

Act No. 20 of 1914, sec. 3 (amended by Act No. 85 of 1926, sec. 3, subsec. 8), reads as follows:

"A person rendering service for another in any of the trades, businesses or occupations covered by this act (other than as an independent contractor, which is expressly excluded hereunder) is presumed to be an employee under this Act. The term 'independent contractor' shall be considered to mean, for the purpose of this act, any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished."

This enactment did nothing more than give a legislative fiat to the existing law and jurisprudence as to who were independent contractors. If the manner of doing the work was subject to the control of the party for whom it was being done, the party doing it was working as an employee of the party having the work done. The right to control the manner of doing the work has always been regarded as indicating work done in the employment of another.

The Civil Code, art. 2756, says:
"To work by the job, is to undertake * * * a work for a certain stipulated price."

To work by the job is to do the whole thing, which is to be done, and the means by which it is to be accomplished is the business of the party who undertakes the job. Thus, in Peyton v. Richards, 11 La. Ann. 62, the court, referring to a man named Thompson, said of his undertaking:

"He engaged to do a certain job for defendant, for which defendant engaged to pay him when completed. But in doing the job, the defendant had no control or superintendence over Thompson."

An authoritative case is that of Faren v. Sellers, 39 La. Ann. 1011, 3 So. 363, 366, 4 Am. St. Rep. 256. We quote from the opinion as follows:

"Both parties quote and accept the exposition of the doctrine of independent contractor, given by Mr. Wood in his work on Master and Servant, viz.:
"'When a person lets out work to another to be done by him, such person to furnish the labor, and the contractee reserving no control over the work or workman, the relation of contractor and contractee exists, and not that of master and servant, and the

contractee is not liable for the negligence or improper execution of the work by the contractor.'"

This, says the court, "is a sound and conservative principle, but the element essential to the discharge of the contractee from responsibility is that he shall not reserve control over the work. This does not mean that he may not reserve a certain kind of power of direction as to the things to be done, provided the method and instruments of doing the thing are left under the exclusive control of the contractor."

The principal test is, says Mr. Wood:

"Who has the general control over the work? Who has the right to direct what shall be done and how to do it? And if the person employed reserves this power to himself, his relation to his employer is independent and he is a contractor; but if it is reserved to the employer or his agents the relation is that of master and servant."

Another case is that of Robideaux v. Hebert, 118 La. 1089, page 1095, 43 So. 887, 888, 12 L. R. A. (N. S.) 632, in which the court said:

"It is clear from the evidence that the defendant Hebert contracted with the railroad company to do and deliver certain specific work, and that the manner of its doing, including the employment, payment, and control of the labor, was left entirely to him. He was, therefore, an independent contractor, for whose acts in the performance of a lawful contract his employer is not liable, since the doctrine of respondeat superior has no application where the employee represents the employer only as to the lawful purpose of the contract, but does not represent him in the means by which that purpose is to be accomplished, and the assertion of liability is based on something done or omitted in the use of such means"—citing authorities.

The opinion shows that Hebert undertook a work by the job, the filling of the low ground approach of the railroad to the Sabine river. He was given the whole thing to be done. The manner of doing it was entirely his affair, although the railroad company, for whom it was being done, furnished him with locomotives, cars and other mechanical equipment to assist him in making the fill.

In Clark v. Tall Timber Lumber Co., 140 La. 380, 73 So. 239, Mr. Tannehill had a contract for making and delivering ties, but the lumber company had no authority over the work, except that the ties had to be made according to certain specifications.

In Ryland v. Harve M. Wheeler Lumber Co., 146 La. 787, 84 So. 55, the court found from the facts established on the trial that the defendant was an independent contractor.

In Johnson v. Vincennes Bridge Co., 9 La. App. 173, 119 So. 539, 540, and Id., 167 La. 107, 118 So. 820, Johnson had undertaken the contract of unloading certain cars of steel, for the Vincennes Bridge Company, and placing the steel at a designated place on the bank of West Pearl river, at a price of so much per ton, furnishing, for the purpose of the work, his own truck, labor, gasoline, and oil. The contract showed that the manner of doing the work was entirely the affair of Johnson. In acting on the case, the court, differentiating it from that of Burt v. Davis-Wood Lumber Co., 157 La. 111, 102 So. 87, and referring to the work in which Burt had been engaged at the time of his injury, quoted from the latter case as follows:

"There was obviously no piece work to be performed, there was no particular job to be executed, there was no specified pile, stack, or quantity of lumber to be hauled, but only such as was pointed out and when pointed out by the employer."

Then returning to Johnson's undertaking the court used this language:

"In the instant case there was a specific pile, stack, or quantity of steel to be carried, there was a particular job to be executed, and obviously a piece of work to be performed."

The same subject was considered in Moffet v. Koch, 106 La. 371, 31 So. 40, and Bell v. Albert Hanson Lumber Co., 151 La. 824, 92 So. 350, and in each of which the test was as in Faren v. Sellers and Burt v. Davis-Wood Lumber Co. See, also, Ruling Case Law, vol. 18, Subject, Master and Servant, sec. 243, p. 782, and Workmen's Compensation Law by Schneider, vol. 1, sec. 37, p. 158 et seq. This last author, commenting, as was done in Bell v. Albert Hanson Lumber Co., on the difficulty of differentiating between cases on the subject, has this to say:

"It would however appear safe to say that one indispensable element of his character as an independent contractor is that he must have contracted to do a specific work and have the right to control the mode and manner of doing it.".

In the present case, the cross-ties belonged to defendant. The defendant kept a physician in its employ for the purpose of treating its employees who might be injured in its service. When plaintiff was injured, its agent requested him to consult for treatment the physician in defendant's employment, and the plaintiff, acting on the request, applied to this physician and was by him treated for his injury. Plaintiff was offered by defendant, through its agent, compensation on account of his hernia, during the period of his disability, if he would undergo an operation. Defendant paid plaintiff weekly, on account of his work, by check, less any sum that had been advanced to him on his work during the week by White, charging and deducting from his check at the same time a certain sum, used in paying the physician employed as above stated. The plaintiff testified that there was, in addition, a further deduction from his check each week, a sum which went toward paying the premium on compensation insurance carried by defendant as protection against damages which it might be compelled to pay employees on account of injuries sustained in its service. Several tie cutters say that they helped each week to pay for this insurance. White and another agent of defendant testified that defendant did not deduct anything from plaintiff's check on account of its compensation insurance, but they admit that, as to the men working under White, plaintiff being among the number, defendant deducted each week from White's check a sum on said account. Therefore, suppose it was done, as claimed by White, the purpose of which was to evade a law on the subject, it still appears that plaintiff was made to share the burden of said insurance as one of defendant's employees. When plaintiff was injured he sent his minor son to continue his work. His son hauled several days and received a pay check from defendant with the customary deductions. White, learning that his son was not 18 years of age, acting on the direction of defendant's higher agents, discharged him, without consulting plaintiff, the reason being that defendant did not employ parties under 18 years of age. This discharge, exercised by defendant against the plaintiff, in regard to the work which the plaintiff was performing through his son, could not be justified, except that plaintiff was doing the work as an employee of the defendant. The testimony of Dan Johnson, who worked for defendant at the same time that White did, doing the same kind of work, i. e., superintending the getting out and hauling crossties, justifies the inference that hauling the ties and stacking them on the railroad was

just as much a part of defendant's work as getting them out, and that, from the time the tree was cut, until the ties were stacked on the railroad, every part of the work was subject to its authority and control. The principle involved in this case is the same that was found to exist in Holmes v. Tenn. Coal, Iron & Ry. Co., 49 La. Ann. 1465, 22 So. 403; Moffet v. Koch, 106 La. 371, 31 So. 40; Bell v. Albert Hanson Lumber Co., 151 La. 824, 92 So. 350; Dick v. Gravel Logging Co., 152 La. 993, 95 So. 99; Burt v. Davis-Wood Lumber Co., 157 La. 111, 102 So. 87; and Morgan v. Nelms, 5 La. App. 414. The lower court properly held that plaintiff was not an independent contractor, but was engaged at the time of his injury in the service and employment of the defendant.

Defendant contends that the hernia which plaintiff sustained is not of the kind contemplated by the law, and that it does not incapacitate him from doing reasonable manual labor. Dr. Cather, physician in the employment of the defendant, says:

"I do not think he can do manual labor; he could work with a truss; it is not as dangerous as an inguinal hernia."

It is our understanding, from the evidence as a whole, that plaintiff cannot, in his present conditon, do any kind of manual labor, such as heavy lifting, straining, or other work, which requires important physical effort on the part of his abdominal muscles, even though supported by a truss.

Plaintiff is a small farmer with a family to support. He presumably engaged in the work of hauling ties for the necessary support of himself and family, adding his earnings in that way to the amount of his crop. No farmer can do his own work, except by engaging in manual labor, because such work is required in keeping up and cultivating a farm and in harvesting the crop. As for driving a motor truck, loading, unloading, and stacking cross-ties, it is the heaviest kind of manual labor. The evidence does not indicate that plaintiff is qualified by education or training to do any kind of work, except that of farming and such as he was doing for defendant and as a result of which he received his injury. As for all work of that character, therefore, any work of a reasonable character, which the plaintiff appears to be capable of doing, the hernia has produced in him a permanent total disability within the sense and meaning of the law, Act No. 20 of 1914, sec. 8, subsec. 1(b) (amended by Act No. 242 of 1928), and as was held by the lower court.

It has been settled by repeated decisions that plaintiff is not required to undergo an operation, in order to entitle him to compensation. Nothing at this time indicates that his injury will be overcome, unless he does submit to an operation and the same accomplishes a cure. A termination of his right to compensation cannot, therefore, be anticipated, except at the end of 400 weeks, the period of time during which the law provides compensation for an injury which has produced a permanent total disability to do work of any reasonable character. The holding of the lower court is correct in that respect.

The defendant contends however that, as plaintiff's service was paid by the number of ties hauled and stacked on the railroad at 15 cents per tie, his recompense must be regarded as the profit, if any, that he made by his hauling, using his own truck, furnishing his own gasoline and oil, and that, as the evidence does not show that he made any profit, he is not entitled to any compensation; and, if any, that it should

not exceed $3 per week, the minimum fixed by law.

The law, Act No. 20 of 1914, sec. 8, sub-sec. 3 (amended by Act No. 242 of 1928), provides:

"The term 'wages' as used in this act is defined to mean the daily rate of pay at which the service rendered by the injured employee is recompensed under the contract of hiring in force at the time of the injury, and anything herein contained to the contrary notwithstanding, the maximum compensation to be paid under this act, shall be twenty dollars per week and the minimum compensation shall be three dollars per week; provided that if at the time of the injury the employee was receiving wages at the rate of three dollars per week or less per week, then compensation shall be full wages."

Subsection (7) of the same section provides that:

"Payments of compensation under this act, shall be paid as near as may be, at the times and places as wages were payable to the injured employee before the accident. * * * *"

Previous to this enactment, the Supreme Court had said in Dick v. Gravel Logging Co., 152 La. 993, 95 So. 99, 101, in which the plaintiff was engaged in cutting saw logs at so much per thousand feet:

"We cannot agree with the argument that in order to bring the employment of the deceased within the terms of the Workmen's Compensation Act, it must be shown that he received 'wages,' meaning 'a daily rate of pay' under the contract in force at the time of the hiring."

And in Burt v. Davis-Wood Lumber Co., 157 La. 111, 102 So. 87, Burt was engaged in hauling lumber from defendant's mill to a designated place on the railroad at so much per thousand feet. Burt had furnished his own team, drove it himself, loaded and unloaded his wagon, paid for the feed of his team, and kept his wagon in repair. The amount to which Burt was entitled on account of his work was one of the disputed questions in the case. The amount of his daily and weekly earnings was uncertain. The court held that Burt was a mere laborer, driving his own team, loading and unloading his own wagon, and that his wages could in no legal sense be regard as a profit on his investment in the team and wagon. The court further said:

"An examination of the evidence on the question of the amount of the average weekly wages has not enabled us to say, that the district judge committed error in finding the amount at $15.00 per week: The evidence certainly would not have justified fixing any less sum. It was within the power of the defendant to show the amount paid to Burt for his services in hauling and the average weekly earnings. However we think the amount allowed is not in excess of the average weekly wages, independent of any sum that might be allotted for the team and wagon."

Therefore, the fact that the plaintiff Charley James was being paid for his work by contract at 15 cents per tie is no reason why he is not entitled to compensation, and, as he was being paid weekly, the amount of his weekly hauling must be ascertained as near as can be, and his earning calculated thereon at 15 cents per tie.

The evidence shows that the defendant paid the plaintiff for the week ending April 6th, $7.10; for the week ending April 16th, $9.85; for the week ending April 24th, $4.55; for the week ending May 14th, $35.50; for the week ending May 28th, $21.30—total $78.30. The court divided this total by five, the number of weeks during which plaintiff had hauled, and in that way found $15.66, on which he acted in fixing plaintiff's aver-

age weekly earnings, and based his compensation accordingly.

The evidence indicates that advances were made to the plaintiff during the time in question, but the amounts advanced were not shown. Therefore these sums remaining due and paid, as above stated, afford no actual information as to the net or gross amounts the plaintiff had weekly earned by his hauling.

The case Burt v. Davis-Wood Lumber Co., 157 La. 111, 102 So. 87, was decided in 1924. Since then Act No. 20 of 1914, sec. 18, subsec. 4 (amended by Act No. 85 of 1926), has provided that:

"All findings of the fact must be based upon competent evidence."

This provision is not modified by the further provision that:

"The Judge shall decide the merits of the controversy as equitably, summarily and simply as may be."

The court therefore erred in taking the total of said sums paid as above stated as the base amount, upon which to compute the compensation to which the plaintiff was entitled.

Defendant's suggestion that, as the evidence does not indicate that plaintiff made any profit as a result of his hauling, he is not entitled to any compensation, and, if any, to only the minimum allowed by law, cannot be accepted, because the payments made indicate that he earned each week a sum in excess of the minimum allowed by the law.

The court allowed plaintiff $50 on account of expenditures for medical atten-

tion and medicine. Defendant contends that, as plaintiff was tendered and received the services of its physician, this sum cannot be justly charged against it. Plaintiff did consult defendant's physician and accepted some treatment from him. But defendant's physician resided at quite a distance from the plaintiff, and it was therefore not convenient for plaintiff to visit him. The allowance was made under Act No. 20 of 1914, sec. 8, subsec. 5 (amended by Act No. 242 of 1928). An employee is not bound, in spite of inconveniences and greater expense, to go to the physician employed by his employer for treatment and medicine, else bear himself the expense of his injury under the law as it now stands. The ruling of the lower court on this subject was not erroneous under the circumstances, and will not be disturbed.

The case will be remanded and reopened for the purpose of receiving evidence showing the amount of plaintiff's net and gross weekly earnings under his contract with the defendant, as near as can be ascertained, during the five weeks that he hauled.

The judgment appealed from is therefore, and for these reasons, annulled, avoided, and set aside, and the case remanded to the lower court. It is further ordered that the case be reopened and evidence received for the purpose of showing, as near as can be done, the number of cross-ties hauled by plaintiff and stacked on the railroad, under his contract with defendant during each of the five weeks that he was engaged in hauling; the amounts advanced plaintiff by defendant, on account of his work, during the same time; the amounts expended by plaintiff for gasoline, motor oil, etc., used for the purpose of operating his truck while so engaged; also, the sums, if any,

which the plaintiff spent for the repair of his motor truck, due to its use in said work; and any further evidence which the lower court may deem to be helpful for the purpose of fixing a fair and equitable weekly average of plaintiff's earnings under his said contract, said average to be used in computing the 65 per cent of wages to which the plaintiff is entitled during the period of his disability, not, however, beyond 400 weeks.

The mention by this court of certain expenses concerning which evidence is to be received is not to be taken as indicating any conclusion on the part of this court that such expenses should, or should not, be considered in fixing a proper weekly average of plaintiff's earnings upon which to compute the compensation to which he is entitled, the purpose of the court being to open the case for such evidence, leaving the result and effect thereof entirely for such action as the court may consider proper in regard thereto. After hearing the evidence on this remand, the lower court is to render such judgment on the question of the amount of compensation to which the plaintiff is entitled, as he finds should be rendered under the law and the evidence on the subject. The judgment to otherwise conform to this opinion and decree herein to the extent that the judgment appealed from has been affirmed.

The cost in the lower court to be paid by defendant-appellant.

The cost of this appeal to be paid by plaintiff-appellee.