The Red River Lumber Company, hereinafter referred to as Company, and its insurer, Federal Underwriters, are made defendants in this suit in which M.B. McDaniel invokes the provisions of the Louisiana Employers' Liability Act, Act No. 20 of 1914, and prays to be awarded compensation as for total and permanent disability, together with payment for medical services required.
The claim involves an injury sustained by plaintiff on June 15, 1939, while he was engaged in hauling logs for the company.
Defendants deny liability to plaintiff, their principal defense being shown in the following averments of their joint answer:
"Further answering in the affirmative, respondents show that on December 23rd, 1938, the Red River Lumber Company entered into a contract with the said M.B. McDaniel as an independent contractor for the hauling and removal of timber to the saw mill of said lumber company at or near Cedar Grove, Caddo Parish, Louisiana, and that the said McDaniel was not an employee *Page 290 
of the lumber company, and did not receive any salary or wage, but received a fixed price of Six and no/100 ($6.00) Dollars per thousand (1,000) feet on all logs delivered to the mill of said lumber company.
"Respondents further aver that the said McDaniel employed his own trucks and employed his own labor, over which the said lumber company had neither supervision nor control, and was only interested in the results of the contract, to-wit: the completed delivery of logs to the mill of said lumber company.
"Respondents aver that the said plaintiff was not an employee of the Red River Lumber Company, was an independent contractor, and was performing work for himself as principal herein, and does not come within the terms and provisions of the Workmen's Compensation Law of the State of Louisiana."
The judgment of the district court, from which this appeal is prosecuted by defendants, granted compensation to plaintiff in the sum of $20 per week for 46 consecutive weeks, or during a period beginning June 15, 1939, and ending May 1, 1940. It also condemned defendants in solido to pay interest and costs and the further sum of $250 for physicians and hospital fees.
The company owns numerous tracts of timbered land in northwest Louisiana and it maintains and operates a saw mill in the Cedar Grove section of the City of Shreveport. Plaintiff's business engagements with it commenced on August 8, 1936, and for about two and one-half years thereafter he was considered as one of its regular employees and carried the title of log hauler. During that period his primary work was the hauling of logs from the mentioned several tracts of land to the company's mill, and for this he received a fixed price per each one thousand feet of timber transported. Usually company trucks were used by him for such purpose, but he paid the cost of operating them. Additionally he discharged other duties required of him by the management for which he was compensated on an hourly basis.
On November 10, 1938, plaintiff purchased from the company, for an agreed price of $700 and on terms of credit, a 1937 Model Ford V-8 truck, together with a Nabors semi-trailer. The entire consideration was represented by one note of the mentioned date payable on or before one year; and a chattel mortgage affecting the truck and trailer secured its payment. Respecting said purchase transaction was a written agreement, executed by the parties two days later, containing the following pertinent provisions:
"It is further agreed and understood that the above note is to be paid by said McDaniel at the rate of $2.00 per thousand feet of logs hauled and delivered at the mill of the Red River Lumber Co., in Cedar Grove, La. The said $2.00 per thousand feet to apply to all logs hauled by the said McDaniel by the above described truck and same is to be deducted from the total amount due said McDaniel each Saturday at the office of the Red River Lumber Co., and credited on the said note until same is fully paid."
Subsequently another written contract was entered into by plaintiff and the company, this being of date December 23, 1938. Therein plaintiff was referred to as contractor, and the parties stipulated:
"Contractor, being an independent contractor having full control and management of his own operations, employment of labor, payment of wages, etc., does hereby agree to and contract for the hauling and removal of the timber from various tracts of timber land owned by Red River Lumber Co., Inc., in DeSoto Parish, Louisiana, and deliver the same to the mill of the Red River Lumber Co., Inc., at Shreveport, Louisiana, upon the following terms and conditions:
"1. Lengths and sizes of logs and heights of stumps to be fixed by Red River Lumber Co., Inc., which may be changed from time to time by written notice.
"2. All logs to be removed, loaded and hauled to Red River Lumber Company, Inc., as aforesaid, with labor to be employed, managed and paid exclusively by Contractor without interference by said Lumber Company. It is expressly agreed, however, and made a material condition and consideration of this contract, that said labor will be employed, managed and paid by said Contractor under the terms and provisions of the Fair Labor Standards Act of 1938.
"3. Contractor shall be paid the contract price of Six Dollars per thousand feet for all logs loaded and hauled to the mill.
"4. Payment shall be made to said Contractor weekly on each Saturday at the office of the Red River Lumber Company, Inc., in Shreveport, Louisiana. Said payments to be for all logs delivered, unloaded *Page 291 
and scaled by Thursday night next preceding the Saturday of payment.
"5. Contractor agrees that as a consideration precedent to the payment as hereinafter specified, he shall make an affidavit substantially to the effect that he has complied with the provisions of the Fair Labor Standards Act of 1938 and that there has been no violations of the same in connection with any labor or operations involved in the hauling and delivering of the logs for which he is at that time to be paid.
"6. Contractor hereby agrees to forfeiture of this contract upon violation of any of the provisions of the Fair Labor Standards Act of 1938.
"7. It is agreed that this contract may be terminated by either party hereto upon thirty (30) days written notice."
It is upon these recited contractual provisions that the defense herein of independent contractor is predicated.
When evidence was sought to be introduced in proof of plaintiff's alleged status of employee, defense counsel promptly and timely objected thereto. The reasons assigned for the objections were that the contract of employment is in writing and speaks for itself, and that the instrument has not been assailed on the ground that it was executed through error, fraud or mistake. The proffered evidence was admitted by the district court subject to the objections; and a complaint regarding such ruling is registered here. The admission, we think, was correct. This is a suit for workman's compensation, and, if for no other reason, such ruling is supported by a provision of the applicable statute wherein it is stated that "the Judge shall not be bound by technical rules of evidence * * *." Section 18, subdivision 4 of Act 20 of 1914, as last amended by Act 85 of 1926.
Also, the conclusion drawn by the trial judge from the adduced evidence accords with ours. He observes in his written reasons for judgment that "it does not appear that plaintiff was in fact operating under the contract relied on by defendant * * *;" and he held that the relationship of employer and employee existed between the parties.
Various circumstances and facts disclosed by the record, we think, justify the deduction that the instrument was executed primarily for the purpose of meeting the requirements of the Fair Labor Standards Statute enacted by the Congress of the United States in 1938, 29 U.S.C.A. §§ 201-219, and that the fixing of the employment status of plaintiff and providing for his working arrangements were not intended thereby.
Propounded to the company's general manager was the question of whether or not "the main purpose and the reason that the contract was executed with McDaniel was to comply with the Fair Labor Act?" He replied: "I would say that was one of the purposes." Then he was asked: "This contract was not intended by the company to have any effect upon McDaniel's status with respect to whether or not he was entitled to workmen's compensation or not?' The answer was "No, sir."
Of much significance, with reference to the testimony just quoted, is the fact that the provisions of the Fair Labor Standards Act are referred to, as above shown, at three different places in the contract.
Important to notice, also, is the recital of the contract that all logs would be removed, loaded and hauled by plaintiff with labor employed, managed and paid by him, all without the interference of the company; whereas, the evidence shows that in the logging operations plaintiff performed only the work of driving the truck and giving attention to the actual hauling, and this was done without the assistance of others. The loading of the logs, and usually their unloading, was handled by the employees and equipment of the company at the latter's expense.
Furthermore, the contract provided for transporting timber only from tracts located in DeSota Parish, Louisiana; but plaintiff operated also from at least two tracts in Caddo Parish. It provided for his payment at the rate of $6 for each thousand feet of timber that he hauled; but in March and April of 1939, he engaged in numerous hauling ventures for the company and was paid several different prices therefor, these ranging from $3.50 per thousand feet to $6 per thousand feet. It provided that he would have full control and management of his operations; but the number and time of the hauls made by him, the place from which the logs were obtained, and the particular logs transported were factors determined by the company's woods foreman.
Besides driving the truck in hauling the timber, plaintiff performed various other tasks for the company, including the *Page 292 
driving of a caterpillar tractor. With reference to these, he was carried on the regular pay roll and paid according to the number of hours that he worked.
The above discussed facts and circumstances, and others disclosed by the record that are unnecessary to mention, convincingly show that the work engaged in by plaintiff after the contract's signing was substantially identical with his previously performed duties. They also reveal that he was not responsible for the execution of any specific undertaking or particular job; on the contrary, the company enjoyed practical control and supervision of him, and could direct his efforts in the manner best suited to its interests. In view of this situation, plaintiff cannot be classified as an independent contractor. Burt v. Davis-Wood Lumber Company, 157 La. 111,102 So. 87; James v. Hillyer-Deutsch-Edwards, Inc., 15 La.App. 71, 130 So. 257; Lee v. Mark H. Brown Lumber Company, 15 La.App. 294, 131 So. 697; Litton v. Natchitoches Oil Mill, Inc., La.App., 195 So. 638.
Numerous authorities are cited by defense counsel in support of the contention that plaintiff was an independent contractor. None is applicable here. In each of the cited cases the right to exercise supervision or control over the person engaged was not retained or possessed by the contractee.
The accident which plaintiff sustained on June 15, 1939, caused fractures of the right femur and left fibular bones. This condition caused his confinement to the hospital and to his home for several months. Thereafter crutches were used by him. On April 1, 1940, plaintiff was able to and did undertake a job of truck driving, although his discomfort from the injury had not then entirely ceased. It was for the intervening period of 46 weeks that compensation as for total disability was awarded. The fixed duration is, we think, justified by the evidence; and plaintiff offers no complaint with reference thereto.
The trial judge found that the average net weekly earnings of plaintiff exceeded $50, and, consequently, allowed the maximum compensation authorized of $20 per week. This finding of fact does not appear to be erroneous and it will not be disturbed. Also the granting of $250 for medical and hospital expenses is warranted by the record.
For the reasons above assigned the judgment is affirmed.
DREW and TALIAFERRO, JJ., concur. *Page 475