Plaintiff, the surviving widow of Odis D. Collins, deceased, instituted this suit against W.F. Smith, Edgar B. Smith and his insurer, Central Surety and Insurance Corporation of Kansas City, Missouri, to recover judgment for workmen's compensation at the rate of Twenty ($20) Dollars per week for three hundred (300) weeks, alleging that her said husband was accidentally killed the morning of November 25, 1941, while performing the duties of his employment with W.F. Smith, sub-contractor of said Edgar B. Smith. Funeral expenses in the sum of Two Hundred Fifty ($250) Dollars are also sued for.
The defendants filed joint answer. Their primary defense is that the terms and conditions of the contract between the deceased and W.F. Smith were such as to make the deceased an independent contractor, and, therefore, no compensation is due and *Page 73 
owing his widow. Secondly, they contend that if compensation is due at all it should be based upon an average weekly wage of Fourteen ($14) Dollars.
There was judgment for plaintiff for compensation for three hundred (300) weeks at the rate of $8.125 per week and for $150 funeral expenses. The court found that deceased's weekly wage should be fixed at $25, 32 1/2% of which is $8.125, Defendants appealed.
Appellee has not answered the appeal and for this reason the award of compensation cannot be increased as is urged in brief of her counsel.
In the main, the facts of the case are not in dispute. Edgar B. Smith had an agreement with the International Paper Company of Springhill, Louisiana, whereby he was given the exclusive right to deliver to it at a fixed price, pulpwood from a specified territory. Other persons who wished to sell the company pulpwood from that territory had to contract with Mr. Smith to do so. He contracted with various truck owners to deliver the pulpwood to the company's mill site or on railroads at a fixed price per cord or unit and the difference between the price and that which the company paid him represented his profit. His brother, W.F. Smith, had two or three trucks and to him was given the privilege of delivering pulpwood to the company from said territory for which he was paid $5.82 per cord. He purchased some stumpage about thirty miles from the company's mill and had it cut into pulpwood dimensions, and stacked.
The deceased owned a new one and one-half ton truck and applied to Edgar B. Smith to haul pulpwood to the mill, but was refused. He was referred to one or more of the several sub-contractors and contacted W.F. Smith. This was on November 22, 1941. They reached an agreement and deceased, with his truck, began work the morning of November 24th. He was killed the following morning in a collision between his truck and a train of the Louisiana and Arkansas Railroad while en route to the situs of the pulp wood.
W.F. Smith agreed to pay the deceased $3.50 for each unit of wood delivered. A unit is 160 cubic feet, which is more than a cord. The deceased was obligated to furnish his own truck, pay for fuel consumed thereby and to hire and pay his own helpers. He was not restricted as to time nor as to the daily quantity he should haul. He was shown the wood to be hauled and authorized to haul as much of it as he desired to the mill yard. No specific quantity of wood was set apart for him to haul. The wood was to be inspected at the mill by an employee of the company. W.F. Smith had the unquestioned right at any time to abrogate the agreement with deceased and leave him without recourse for any loss he might experience on that account; and deceased was free to abandon the contract if and when he chose to do so. Smith had the unquestioned right to discontinue the services of the deceased at his pleasure or could have required him to haul wood from other locations or quit.
It has often been held by the courts of this state, in fact, it is now well settled, that in cases of the character of the present one where the terms of the engagement between the contractants are as they appear herein, the relation of employer and employee arises. Notwithstanding that the party obligated to do the hauling owns and uses his own means of transportation and hires and pays his own helpers, he is not an independent contractor within the meaning of that term as defined by the courts. The following cases are among the many so holding: Burt v. Davis-Wood Lumber Co., 157 La. 111, 102 So. 87; Dick v. Gravel Logging Co., Inc., 152 La. 993, 994, 95 So. 99; Morgan v. Nelms, 5 La.App. 414; James v. Hillyer-Deutsch-Edwards, Inc., 15 La.App. 71, 130 So. 257; Lee v. Mark H. Brown Lumber Co., 15 La.App. 294, 131 So. 697; McKay v. Crowell Spencer Lumber Co. et al., La.App., 189 So. 508; Litton v. Natchitoches Oil Mill, Inc., et al., La.App., 195 So. 638; McDaniel v. Federal Underwriters et al., La.App., 2 So.2d 289.
It is true, as argued, that neither of the Smiths exercised control or supervision over deceased's operations, but this is not the true test to determine whether he was or was not an employee. The true test is whether the employer has the right to exercise control and/or supervision over the operations.
The deceased hauled pulpwood for only one day. He delivered only two loads on that day for which his widow was paid $14.42. He had two colored helpers whose daily wage was $1.50 each.
The most serious question for determination is the fixing of the amount of weekly wage as a condition precedent to determining *Page 74 
the amount of compensation due the plaintiff. To do this is not without difficulty. Since the deceased was an employee of defendant, W.F. Smith, and was driving his own truck when killed, it necessarily follows that for his labor he was receiving some compensation. Considerable effort was made to bring this case within the rule for the calculation of weekly wages laid down in Litton v. Natchitoches Oil Mill, Inc., et al., supra, and McDaniel v. Federal Underwriters et al., supra.
The lower court rejected the rule followed in these two cases. It preferred to follow and did follow the rule adopted in Alexander v. Latimer, 5 La.App. 41; Morgan v. Nelms, 5 La.App. 414; Lee v. Mark H. Brown Lumber Co., 15 La.App. 294, 131 So. 697, and in so doing, said:
"* * * A person who owns and drives a truck must needs earn more with the truck and his labor than one who only drives a truck, because he has an investment on which he must make a profit, or go broke. An employer ought not to have to pay compensation based on the profits earned by the truck. On the other hand, I do not believe white truck drivers could have been found to work at $14 a week, and my opinion is that $25 a week would be about right for a driver. In all probability deceased with his truck, which was then new, would have earned more than that, but a part of the earnings would have been for the truck, for which I do not believe the employer ought to have to pay. * * *"
Regardless of what may be said for or against the rule referred to in the Litton and McDaniel cases, we do not think it applicable to the facts of this case. Here, the employee worked and used his truck only one day under the contract of hiring. The testimony is not at all conclusive that the day's work netted a profit when operating expenses and depreciation on the truck are taken into account. Whether a profit was made or a loss sustained from this day's operation, we do not think determinative of the question of the amount of weekly wage of deceased. If this were not true in any case where the employee used his own means of transportation and worked only one day at a definite loss he would not be entitled to any compensation, whereas if the day's operation resulted in a relatively large net profit, a maximum award of compensation would be due, and this, too, regardless of what such profits might be over weeks or months of operations.
The point we are trying to emphasize is that one day's work of this character is not a safe criterion to follow in deciding the amount of compensation due the injured employee or his dependents if he is accidentally killed while performing the duties of his employment.
The testimony shows that the thirty miles haul over which the deceased was operating his truck was an unusually rough one; that the wear and tear on trucks, especially their tires, was unusually great, and that practically all persons who bargained to haul pulpwood over it abandoned their engagement because of inability to do so profitably.
The lower court held that since the deceased was driving his own truck, his weekly wage should be arrived at on that basis; that is, the truck should be entirely eliminated as a factor in determining the compensation due plaintiff, and the personal service or labor of the deceased as driver solely be considered in determining the amount of such compensation.
Several truck owners who were or had been engaged in hauling pulpwood to the mill in Springhill testified concerning the daily wage paid their drivers in that territory. There is some variance on the subject. W.F. Smith paid 35¢ per hour and usually worked 40 hours per week. In case of overtime work the drivers were paid for time and one-half. Other truck owners paid from $3 to $3.50 per day regardless of hours. In order to deliver as much wood as possible, a twelve hour day and a six day week was the rule. All of these witnesses used colored drivers. The trial judge was of the opinion that no white driver in this territory would work for less than $25 per week. There is no positive testimony in the record to sustain this conclusion. However, on the basis of 35¢ per hour for a twelve hour day and six days a week, a driver would earn $25.20. If overtime was paid for the hours in excess of forty per week, the weekly wages could easily be $25 or more. All things considered, it is not manifest that the fixing of $25 per week as compensation for a driver of the character of deceased is excessive, and for this reason we are not disposed to disturb the conclusion of the trial judge on the point. *Page 75 
Being of the opinion that the lower court correctly adjudged the issues of this case and for the reasons herein assigned, the judgment appealed from is affirmed with costs.
 On Application for Rehearing.