Rayborn H. Murphy was accidentally killed on May 3, 1943, while discharging his duties under written contract with defendant, the Tremont Lumber Company, wherein he agreed and obligated himself to cut, haul and deliver to defendant, pine and hardwood logs of certain grades, dimensions, etc., from a twenty acre tract of land owned by defendant. The widow of the decedent, Mrs. Frankie Mae Murphy, individually and as tutrix of her two children, Harry Dean Murphy and Charles Ray Murphy, aged thirteen and twelve years respectively, instituted this suit against the defendant to recover workmen's compensation on the theory that the relationship of the deceased to the defendant, when killed, was that of employee or laborer, under the facts of the case and within the meaning and intendment of the Workmen's Compensation Law. The allegations of the petition clearly characterize the deceased as being an employee or laborer.
The defendant challenges the correctness of plaintiff's position and resists the suit on the sole ground that the status of the deceased, when killed, was that of independent contractor. The provisions of the written contract are relied upon as sustaining this position. Defendant carried the burden of proof on this special defense. *Page 80 
The lower court agreed with defendant's contention and rejected the demand of plaintiff. Lengthy written reasons were assigned for this action. Plaintiff prosecutes this appeal.
[1] The written contract between the deceased and the defendant is quite comprehensive in its terms and stipulations. It specifically denominates the deceased as independent contractor. However, the contract's recitals, standing alone, are not conclusive of the relationship between the deceased and defendant. That relationship may only be determined from the facts of the case, including the manner and method of the contract's execution. Crysel et al. v. Gifford-Hill Company, La. App., 158 So. 264-267. If this were not true, as a general principle, it is obvious injustice could easily be perpetrated upon persons who otherwise would be entitled to recover workmen's compensation.
The contract stipulates that the defendant contracts and agrees with the deceased that he shall cut, haul and deliver to defendant on its loading track at Cartwright, Louisiana, using one truck only, and on such days as the defendant wishes to accept logs, all of the pine and hardwood saw log timber that defendant wishes to have cut from the tract of land described therein. It is further provided that an agent of defendant shall designate the trees to be cut by marking them; but should the trees not be marked the cutting shall be done according to directions and specifications at length set out in the contract.
The deceased was to be paid and was paid for logs cut and delivered under the contract, Seven Dollars ($7) per thousand feet. The quantity was to be determined by Doyle rule scale by an employee of defendant. The deceased agreed that he would not at any time cut more timber than he could remove in two days and that he would deliver all logs before being damaged. Work was to begin immediately after signing the contract and final delivery of all logs was to be not later than June 1, 1943. Defendant reserved the right to direct the lengths of the saw logs to be cut, but was prohibited from requiring logs to be of lengths less than ten feet. The deceased agreed to pay for the cutting, hauling and delivery of logs and for all supplies furnished to his log cutters and haulers not later than defendant's regular pay day following delivery. He further agreed to furnish evidence of such payments when required by defendant. This provision was intended to protect defendant from furnishers' and laborers' lien against the logs.
The record is void of any evidence, which, to any extent, indicates that the terms and conditions of the written contract were departed from by either contractant. On the contrary, it is shown that operations under the contract were strictly in keeping with its stipulations. Therefore, to correctly adjudge the sole issue tendered it is necessary only to decide whether the written contract contained stipulations and agreements that destroy the result it was mainly designed to accomplish. In other words, does the contract, for the reasons urged by appellant, or otherwise, negative the contention that the deceased was an independent contractor?
Section 3, paragraph 8 of Act No. 85 of 1926, being an amendment to the Workmen's Compensation Law, Act 20 of 1914, provides:
"A person rendering service for another in any of the trades, businesses or occupations covered by this act (other than as an independent contractor, which is expressly excluded hereunder) is presumed to be an employee under this Act. The term 'independent contractor' shall be considered to mean, for the purpose of this act, any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or a whole, under the control of his principal as to result of his work only, and not as to the means by which such result is accomplished."
Plaintiff's counsel submits that for the following reasons the status of the deceased was not that of independent contractor, as defined by the Act, to-wit:
1. That in fulfilling his part of the contract he performed manual labor;
2. That there was no specific recompense for the whole work or a unit of the whole;
3. That there was no specified result as a whole or as a unit, to be accomplished;
4. That the work to be accomplished was wholly at the discretion of the employer and under its complete control and supervision.
We take up for discussion and decision these points in the order named: *Page 81 
[2] 1. The deceased assisted his laborers to load the logs on the truck, and drove it himself. Appellant contends that this sort of labor is "manual" and, therefore, under said definition of independent contractor the deceased was a laborer or employee. We do not concur in this conclusion. Performance of this character of work or labor by decedent was inadequate to transform his status to that of laborer, if such status in all other respects was that of an independent contractor. He was not doing manual labor as the term is generally and commonly understood. He was not obliged to do manual labor and was not by the defendant required to do so in order to fulfill his obligations under the contract. Whether he did so or not addressed itself to him solely. As is said in Hatton v. Haynes,175 La. 743-750, 144 So. 483, 485:
"The work which he performed was for his personal benefit, adding to his profit by saving him the expense of employing others to do the work for him."
Concerning this question, Judge LeBlanc, of the First Circuit, in Myers v. Newport Co., 17 La. App. 227, 135 So. 767, 769, said:
"As we said in the recent case of Cobb v. Long Bell Lumber Co., [16] La. App. [297], 134 So. 310, 312, 'If what counsel is contending for be made an unqualified or absolute test, independent contractors would rarely if ever come up for consideration in suits of this character.' We venture to assert that it is more frequent than not that an independent contractor is a person who himself performs manual labor of some kind in the work he is engaged in. A brick mason who engages to do the brick work on a building as an independent contractor almost invariably works himself, even though he hires help. So does the painter, the tinsmith, the plumber, and others of that class who render service, 'for a specified recompense * * * either as a unit or a whole.'
"In the way in which counsel would have us apply the meaning of the term, a carpenter who contracts to erect a house at a stipulated price, who makes the plan, furnishes all material, and has entire control over the work in every respect, except as to result, would not be an independent contractor, simply because, in the course of his work, he personally performed most of the manual labor involved in its construction. Such we do not believe was the legislative intention in defining the words, 'independent contractor,' and we are not ready to so hold."
[3] Points 2 and 3 will be considered together. The contract, as a whole, it seems clear to us, provides that the deceased was given the exclusive right to cut, haul and deliver all the described saw logs from the land prior to June 1, 1943, or within a period of forty-five days from the signing of the contract, for which he was to receive a stipulated recompense per thousand feet log scale. True it is the full amount of recompense could not be definitely determined when the contract was signed, but it was possible of determination. That which may be made certain is, generally speaking, certain for the purposes of civil contract. The unit of the contract was all the timber being and standing on the land of the kind, character and specifications named in the contract.
The situation prior to the signing of the contract was simply this: Defendant owned the timber and a saw mill. It desired to have the timber cut and delivered to it and was willing to pay a definite price therefor. The deceased owned his own truck, was experienced in the cutting and hauling of saw logs and wished a contract to do so. In these circumstances it was not difficult for the parties to reach a common understanding. After the contract was signed, defendant's primary interest was in the result, not the means of attaining it. It agreed to pay for all logs cut from the land and to accept and receive them at a certain place and within a definite period. To all of this, the decedent assented.
[4] The fact that the contract limited the deceased to the employment of only one truck in delivering the logs, does not, in our opinion, materially affect the relationship of the parties one way or another. The tract of land was small. Other parties were cutting timber and delivering logs from adjacent tracts. It is reasonable to assume that defendant did not wish the logs delivered too rapidly as deterioration would ensue if they were allowed to accumulate faster than they could be converted into lumber. In this connection it is pertinent to add that these same parties entered into the same sort of contract in August, 1942, in which the timber on forty acres of land was to be cut, hauled and delivered, and it was stipulated that four trucks were to be *Page 82 
used to do so. The price to be paid was $8.00 per thousand feet.
Point 4 relates to the question of control and supervision by the defendant over the operations of the decedent. As a matter of fact, defendant exercised no control or supervision over deceased's operations in fulfilling his part of the contract. It is true a representative of the defendant did, a few times, go to the scene of cutting and briefly watched the work as it progressed, but he made no attempt to direct nor did he even suggest how the work should be done. He was without right to do so. He was there for one purpose only, and that was to inform himself that his company's timber was being cut closely and in the manner stipulated in the contract. In other words, his sole desire was to know if the contract was being observed as regards the kind, quality and specifications of timber being cut. He had the unquestioned right to do this without affecting the status of the decedent as an independent contractor.
It is a uniform practice in executing contracts calling for the erection and construction of buildings, bridges, and other private and public works, involving large and small financial outlays, that supervision on the part of the one advancing the money to do the work, or the owner of the structure or thing being built, is specifically retained to the extent of seeing to it that the terms of the contract are strictly lived up to. From the very nature of things it is highly important to the owner or the one advancing the money that this be done.
In this case the decedent hired, fixed the wages of and paid his own employees. He was not carried on defendant's pay roll, nor did it advance to him cash, supplies or anything else to enable him to perform the contract, not even fuel oil for his truck. He was free to cut and deliver logs in his own way subject to the reasonable stipulations of the contract incorporated for defendant's protection. Defendant, without good cause, had not the right to abrogate the contract or refuse to live up to its obligations therein without incurring responsibility for such damages as decedent would have sustained therefrom. Decedent did not hire his services to defendant, but was working as his own master. Helton v. Tall Timber Lumber Company of Louisiana, Inc., 148 La. 180, 86 So. 729.
Plaintiff relies upon the following cases, to-wit: Dick v. Gravel Logging Company, Inc., 152 La. 993, 95 So. 99; Burt v. Davis-Wood Lumber Co., 157 La. 111, 102 So. 87; Nesmith v. Reich Bros., et al., 203 La. 928, 14 So.2d 767; Litton v. Natchitoches Oil Mill, Inc. et al., La. App., 195 So. 638; McDaniel v. Federal Underwriters et al., La. App., 2 So.2d 289.
A study of these cases reveals that the facts of each in material respects are unlike those of the present case. We deem it unnecessary in this opinion to prolong it by differentiating the facts of each of the cited cases from those of the present one. The Dick and Burt cases, early ones to deal with the questions therein presented, are still leading cases, but they are not controlling of the present case for the reasons above mentioned.
We are of the opinion that the judgment of the lower court is correct, and for the reasons herein assigned, it is affirmed, with costs.