KENNON, Judge.
Alleging that the defendant, G. L. Malone, was engaged in the business of purchasing, cutting, hauling and shipping pulpwood in the Parish of Grant and that he was permanently and totally incapacitated as the result of injuries received on the 16th day of September, 1946, while in Malone’s employ, plaintiff filed this suit for compensation not exceeding four hundred weeks and for medical expenses.
In response to a plea of vagueness filed by defendants, Malone and his insurer, plaintiff alleged that the accident occurred on the H. S. Garlington tract of land in Grant Parish, Louisiana.
In a joint answer, defendant and his insurer set for that Malone was a purchaser rather than a producer of pulpwood products, purchasing same at a given price per unit or cord delivered on railway tracks, loaded and consigned to the International Paper Company. The joint answer denied that plaintiff was ever an employee of Malone and set forth that the relationship between plaintiff and Malone was that of seller and purchaser of pulpwood, or, in the alternative, that plaintiff was “an independent contractor or subcontractor of Malone.”
From a judgment of the District Court granting plaintiff compensation as prayed for, defendants prosecute this appeal.
At the time of plaintiff’s injury and for considerable time prior thereto, defendant Malone was engaged extensively in the production and sale of pulpwood to the International Paper Company, consigning same in car lots at various shipping points, including Tioga, Pollock and Bentley in Grant Parish, Louisiana. Plaintiff Frazier came to Malone in 1945 and made an arrangement to enter the pulpwood business for Malone and purchased several trucks from Malone, principally on a monthly basis. The ownership and registration of the trucks remained in Malone’s name and the parties signed a contract that for at least fifty-two weeks same should be used principally by Frazier in hauling pulpwood for Malone.
Defendants’ theory of Malone’s relationship with plaintiff Frazier is shown by paragraph 26 of the answer, which we quote below:
*371 “Answering Paragraph Twenty-six of plaintiff’s supplemental petition, which has been filed herein and in answer to exceptions previously filed by these defendants and under an order of this Court to amend and amplify the allegations of plaintiff’s original petition, defendants aver that the H. S. Garlington tract of land, which is described in Paragraph Twenty-six in plaintiff’s first supplemental petition, was a tract of land, timber from which was purchased, paid for and controlled exclusively by the plaintiff herein, and that the only connection said defendant, Malone had with said timber tract was that, during the war years on account of the critical shortage of labor, defendant, Malone, made a contract with the War Department for the services of numerous war prisoners, which labor the said Malone sold the services of to various timber operators and others who required labor in cutting timber; the said plaintiff requested and engaged the services of said prisoner labor from said Malone to cut and stack plaintiff’s timbe/ in the woods on the described Garlington tract, and other property belonging to the said plaintiff; the said plaintiff bought the services of such prisoner labor from the said Malone on the basis of unit price per cord; and such wood as the prisoner labor cut from the timber land owned by the plaintiff and for the services of which labor the said plaintiff paid the said Malone, either directly or out of the purchase price for the pulpwood delivered to railroad cars.
“That after said wood was cut and stacked on said Garlington tract, the said Malone had no further connection therewith ; said wood, when subsequently agreed to be purchased by Malone, was loaded, hauled and delivered solely by the said plaintiff, his crew of men, his trucks, and that therefore the said plaintiff was in no manner an employee or even an independent contractor under Malone for the loading and hauling of said pulpwood, which he alleges he was hauling from .the Garlington tract at the time he was injured.”
A reading of the last sentence of the above quoted extract from defendants’ answer indicates that defendants would have the Court consider Frazier first in the category of a producer of pulpwood in which capacity he bought the services of prisoner of war labor from defendant Malone and that Malone “subsequently agreed” to purchase the pulpwood so produced and then made a contract (a sort of third agreement) with plaintiff to load, haul and deliver this pulpwood to the shipping point. However, the record discloses that there was but one continuing arrangement between Malone and plaintiff, which included the operation of purchasing, cutting, stacking, checking, loading on trucks, hauling, loading on the railroad cars and the billing of same to the International Paper Company.
During the months preceding the injury and during the month of the injury, plaintiff received from Malone cash payments of $90 per car loaded, with an occasional car paid 'for at the fate of $150 per car. The statements further show that he was credited, at intervals, with all the cord wood loaded into these cars on the basis of $8.70 per cord delivered in the cars during each weekly period for which the statements were issued. The statements showed, after deducting the $90 (in some instances $150) per car, the balance was credited to “prisoner pf war account.” Malone testified that he (Malone) paid the government for this PW labor on a cordage basis and in turn charged Frazier this amount plus an additional charge for Malone’s expense in furnishing the trucks and supervising foreman. He also stated that he charged to Frazier’s prisoner of war account such sums as he paid for timber on tracts from which Frazier cut pulpwood. The record is inconclusive as to the settlement of this PW account between Malone and Frazier.
It was while engaged in loading one of the trucks with pulpwood from what is referred to in the record as the Garlington tract that plaintiff was injured. On this tract, Malone made the initial contract with Garlington with a view of purchasing pulpwood. Frazier followed up this call and closed the trade. Malone, who had a contract with the Federal government for *372 the utilization of prisoner of war labor, sent his trucks to a nearby Army camp and brought PW laborers to the Garlington tract where the pulpwood was cut, stacked and ■ counted under .the supervision of a foreman employed by Malone. The landowner was paid for his trees by two checks signed by Malone, payable to Frazier, which Frazier endorsed and delivered to Garlington. Frazier and men hired by him loaded the measured wood which had been cut by the PWs onto trucks, sold by Malone to Frazier, with the license and insurance still standing in the name of Malone. The pulpwood was then delivered on the railway car and consigned in Malone’s name to the International Paper Company.
Plaintiff often found tracts of timber which he purchased in Malone’s name for the purpose of producing pulpwood. In addition to furnishing money for purchase of wood on the stump, defendant Malone furnished plaintiff money with which to purchase pulpwood already cut and stacked and in some instances paid the landowners directly for pulpwood produced by them and bought on location by Frazier. Frazier in such cases would give the landowner a written order or note directing Malone to pay for the, pulpwood inspected and purchased by Frazier.
Under these and the other circumstances disclosed by a study of the record as a whole, we conclude that the actual ownership or legal title to the pulpwood was never vested in Frazier. Such possession as he may have exercised was in his capacity as an agent or representative of his employer and principal, Malone, whose agent and helper he was in the finding and purchasing of pulpwood, cut or uncut, and whose employee he was in the hauling of the wood and the loading and consigning of the pulpwood cars.
Malone was in fact the owner and operator of the over-all operation. He had the right to direct Frazier as to where he would haul wood from and to what point he should deliver same. Malone contracted with the government for the use of prisoner of 'war laborers whose hands handled the saws that cut the trees. Malone’s trucks carried these laborers to their place of work. Malone’s foreman supervised their activities and measured the wood their labors produced. Malone’s check for the price of this wood (through Frazier) was delivered to the landowner. Some of the trucks used in hauling the wood still stood, for the purpose of licenses and insurance, in Malone’s name. The cars into which the wood was loaded were billed as to. their destination in Malone’s name.
The fact that Malone, for his own convenience, or for the convenience of himself and Frazier, carried a portion of his operations on his own books in the name pf Frazier and paid Frazier, ostensibly at least, on the basis of so much per cord less the expenses of buying timber, and cutting timber, did not remove Frazier from the category of being an agent and employee of Malone.
The holding by this Court in the case of Collins v. Smith et al., 13 So.2d 72, 73, is applicable to the facts of the case before us insofar as ownership of the trucks and the payment by plaintiff of his own helpers is concerned. We quote from that case: “It has often been held by the courts of this state, in fact, it is now well settled, that in cases of the character of the present one where the terms of the engagement between the contractants are as they appear herein, the relation of employer and employee arises. Notwithstanding that the party obligated to do the hauling owns and uses his own means of transportation and hires and pays his own helpers, he is not an independent contractor within the meaning of that term as defined by the courts. The following cases are among the many so holding: Burt v. Davis-Wood Lumber Co., 157 La. 111, 102 So. 87; Dick v. Gravel Logging Co., Inc., 152 La. 993, 994, 95 So. 99; Morgan v. Nelms, 5 La.App. 414; James v. Hillyer-Deutsch-Edwards, Inc., 15 La.App. 71, 130 So. 257; Lee v. Mark H. Brown Lumber Co., 15 La.App. 294, 131 So. 697; McKay v. Crowell & Spencer Lumber Co. et al., La.App. 189 So. 508; Litton v. Natchitoches Oil Mill, Inc., et al., La.App., 195 So. 638; McDaniel v. Federal Underwriters et al., La.App., 2 So.2d 289.”
*373 The case before us is distinguishable from the case of Murphy v. Tremont Lumber Company, La.App., 22 So.2d 79, and other similar cases cited by defend; ants in that Frazier had no contract to process or haul wood from a designated or specified tract or tracts; Frazier had no contract to haul a specified number of cars of pulpwood or to haul wood for any specified period of time. On the contrary, his employment was from day to day or load to load and subject to control by Malone and to termination at the will of Malone.
The facts disclosed by the records do not sustain defendants’ contention that the relationship between plaintiff and. Malone was either that of seller and purchaser or that of principal and independent contractor.
The record sustains the District Judge’s finding as to plaintiff’s disability.
The judgment appealed from is affirmed, with costs.