ELLIS, Judge
(dissenting).
This is a compensation suit in which the decision is dependent upon a proper appreciation of the proven facts. Being of the opinion that the general statements, or conclusions, of the facts proven as stated in the majority and concurring opinion are in error, I must, therefore, register my dissent.
*867 Plaintiff in his brief concisely sets forth the issue as follows: “The defense made by defendant that plaintiff was a vendor of manufactured ties and that defendant, Stanley W. Gates, is engaged solely and exclusively in the business of purchasing ties and not in the manufacture of them, if true, it logically follows that plaintiff could not be an employee of defendant.”
The record shows that the defendant, prior to any dealings with the plaintiff, was purchasing ties from one E. D. Goss. It is shown that Goss owned a portable saw mill and that he would cut and haul the logs to his saw mill and saw them into cross ties and then haul the cross ties to the railroad tracks and there stack them, and the defendant, approximately once a week, would go to the railroad siding where the ties were stacked, inspect them, and if up to grade and according to specifications, would purchase the ties.
During the time the defendant was purchasing ties from Goss, plaintiff approached Goss and they entered into an agreement whereby plaintiff was to cut and haul the logs to Goss’s mill where Goss would saw them into cross ties, and then plaintiff was to haul the manufactured ties to the railroad siding and stack them. It is shown these ties were sold at the railroad and it was understood that they would come to certain specifications and grades and be stacked in a certain way. Under the arrangement between Goss and plaintiff, the latter was to receive 65‡ per tie and Goss the balance. For example, if the tie under the schedule prices brought $1.30, plaintiff would get 65^ and Goss 655*. If the tie was only worth $1.00, then Goss would receive only 35 ‡. The defendant was not consulted prior to nor at the time that the plaintiff and Goss entered into this agreement. He had nothing to do with it.
The first week that plaintiff worked with Goss under this agreement, the defendant paid Goss for the ties delivered at the railroad track and he in turn paid plaintiff, but plaintiff wanted the defendant to pay him direct, so the matter was discussed with the agent of the defendant who told them it was immaterial to him if that was the way they wanted the checks made. Thus we see that the defendant had nothing to do with employing plaintiff at this time and knew nothing of his agreement with Goss until one week after it had been entered into, and then at Goss’s request agreed to take 65‡ from each tie that they purchased from him and pay it directly to plaintiff.
It is shown that the timber which Goss was manufacturing into ties played out and it was then necessary to obtain more timber, and defendant’s agent located some timber belonging to a Mr. Gabbert. Plaintiff was anxious to continue making ties so he entered into an agreement with Goss to move his mill to the Gabbert timber and rent it on fhe following basis. Plaintiff was to pay all operating expenses of the mill including fuel and labor, and agreed to give Goss all slabs or siding or lumber resulting from the manufacture of the ties as rental.
It is true that defendant’s agent negotiated for the purchase of the timber from Gabbert, but I am of the opinion that it was done for the benefit and on behalf of plaintiff on a pay as you cut basis. It is true that defendant had a selfish motive in assisting these small tie cutters, namely, to keep a large volume of ties coming to their railroad yards where they could purchase them. The record shows that plaintiff knew the timber that was to be cut; that he went into the woods with the agent of the defendant and the agent of the owner of the timber and watched the pine trees which he was to be allowed to manufacture into cross ties being marked with paint. Gabbert sold the timber on what is known as selective cutting. All the hardwood suitable for ties could be cut but the pine was marked. In otherwords, he was in the pole and piling business and retained all pine trees suitable for such purposes. The defendant did not designate the trees to be cut; they were strictly designated by the owner of the timber.
It is true that the defendant retained the stumpage due to Gabbert for the timber *868 cut, but this agreement was based upon the condition that the defendant would hold the stumpage on all ties delivered to and purchased by the defendant which were' cut from the Gabbert tract. In other words, if plaintiff had sold ties elsewhere, which, as I see it, he could have done at the risk of having Gabbert, not the defendant, terminate his timber cutting, under these conditions there was no obligation on the defendant to pay Gabbert. A most reasonable explanation of why the defendant retained the stumpage for Gabbert is given by the agent of the defendant, who made the arrangements for plaintiff to cut the Gabbert timber. In his testimony he stated: “Q. It is set out in Mr. Hebert’s petition that Mr. Gates had the right to select the tract or tracts from which the logs were cut and from which the cross ties were to be made. What do you have to say in connection with that? A. I say that is wrong. Mr. Gates had no right or neither did I, to say where, when or how Mr, Hebert cut ties. We just merely acted there as an advisor, since Mr. Gabbert wanted the ties cut, his time was limited and so forth, and he told me, he said, ‘I will let the timber be cut into ties if you or somebody, someone will deduct the stumpage and pay me.’ He said, ‘I don’t want to be bothered with three or four mills and having to keep up with all them myself.’ He said, ‘I can’t get around to keep up with stumpage and how much they cut.’ He said, ‘That will simplify my problem and let whoever buys the ties deduct the stumpage.’ ”
There were three people cutting and manufacturing ties on the Gabbert land and the defendant was purchasing them. In my opinion, the defendant exercised no control or supervision over the plaintiff in the manufacture of the ties, nor did he have a right to terminate plaintiff’s manufacture of ties from the Gabbert tract. Had defendant told the plaintiff to stop cutting the Gabbert timber, plaintiff would have been within his rights in refusing. It would have been entirely up to Gabbert as to whether plaintiff could have continued his operations.
The record shows that no compensation insurance premiums were deducted from plaintiff’s checks prior to the accident. It is clearly shown by the testimony that this was done subsequent to the accident at the request of the plaintiff.
In my opinion, it is clearly shown that plaintiff, when he first came into the picture, made his own arrangements with Goss, and the defendant knew nothing of it until after it was done. And the next thing we find, plaintiff, at his own expense, moved the, Goss mill to the Gabbert timber and, placed it where he wished and rented the Goss mill and gave away by-products to Goss in payment of the rent. If this timber belonged to the defendant, they would have had something to say about part of it being given away in payment for the rent of this mill. Futhermore, plaintiff employed his own labor, had his own truck, cut when and as he pleased and hauled over any route and as many ties as he wished. Arrangements for the purchase of the timber were made on •behalf of plaintiff, on a pay as you cut 'basis, which was well understood by the latter as well as the owner of the timber. Defendant had no contract with plaintiff; he merely told plaintiff, as well as other tie makers, that “if you will manufacture your cross ties in certain lengths and according to certain specifications and deliver them at points on the railroad as designated by us, we will buy the ties according- to a certain price schedule, in accordance with their grade.”
I do not think the case of Deason v. Coal Operators Casualty Co., 43 So.2d 630, is similar to the present case for the reason that in the Deason case the defense was that the plaintiff was an independent contractor. No such question is raised herein. Secondly, plaintiff cut wood from various tracts as directed by defendant’s agent and could be moved by defendant’s agent at will from one tract to the other. This is not true in the present case. Plaintiff was cutting wood from a tract secured for him, and defendants did not have the right to move plaintiff at will from one tract to the other. Remember that plaintiff could not operate without the Goss mill *869 which he independently rented and operated and which it cannot he denied the defendant had nothing to do with.
Also, in the Deason case, it was held that the defendant had the power or right to terminate at will the work of the plaintiff. In the present case, the only thing the defendant could do was to stop buying ties from the plaintiff. In fact Gabbert, the seller, terminated the cutting by Plaintiff, not the Defendant.
Neither is the present case controlled by Collins v. Smith, 13 So.2d 72, for under the facts in that case the Court held that Smith had the unquestioned right to discontinue the 'services of the deceased at his pleasure or could have required him to haul wood from another location or quit.
I therefore believe under the facts as I appreciate them that the judgment of the District Court is erroneous and should be reversed, for I am of the opinion that the relationship between plaintiff and defendant was that of vendor and vendee and not employer and employee.
I respectfully dissent.